[No. 12171.   Department Two. — December 4, 1889.]

## E. R. McCARTHY, Respondent, v. MUTUAL RELIEF ASSOCIATION OF PETALUMA, Appellant.

Party-wall — Effect of Agreement for — Right to have the Face of the Wall Finished in a Particular Way. — An agreement for a party-wall confers only an easement to use the wall as a party-wall. Each party owns the half of the wall which is upon his land, and neither has the right to have the face of the other's half finished in any particular manner, in the absence of a special agreement to that effect.

Id. — Parol License — Revocation. — A parol license may be revoked before it is executed.

Id. — Estoppel — Expenditure upon the Faith of a License. — When a party relies upon expenditures upon the faith of a license as an estoppel, the evidence of the facts constituting the estoppel should be clear, and the expenditure should not be trivial in amount.

Appeal from a judgment of the Superior Court of Sonoma County, and from an order refusing a new trial.

The facts are stated in the opinion.

*E. S. Lippitt*, for Appellant.

*Albert G. Burnett*, for Respondent.

Hayne, C. — This was an action for the recovery of damages for an injury to the face or end of a party-wall, and to recover possession of the plaintiff's half thereof. The trial court gave judgment in favor of the plaintiff

for the recovery of the possession of half of the wall and for thirty dollars damages, and the defendant appeals from the judgment, and from an order denying a new trial.

The parties to the suit, being the owners of adjoining lots, and being each about to erect a building on their respective lots, made a written agreement for a party-wall, which agreement is set out in the findings. The wall was accordingly constructed. The dispute was as to how the face or end of the wall should be finished. It appears that the plans for the defendant's building were originally drawn upon the idea that it was to stand wholly upon the defendant's own lot; and the wall was to be only thirteen inches thick. With this view, the pilasters or coverings for the face of the walls were ordered thirteen inches wide. The party-wall, however, was seventeen inches wide for the first two stories. And when the thirteen-inch pilaster came to be applied to the seventeen-inch wall of the first story, it looked so out of proportion that the plaintiff himself suggested that a wider one be made for the first story, and promised to pay, and did pay, the difference in the price of that pilaster. The plaintiff then went on with the construction of his building, and made his upper story to correspond with his opposite wall, which was also a party-wall with another building. In order to effect such correspondence, he made the pilaster for his upper story to cover only his half of the party-wall between his building and that of the defendant.

The defendant, however, whose building was to be higher than that of the plaintiff, was by no means satisfied with this arrangement. Its officers remonstrated with the plaintiff, who at first said that he could not control his contractor, but that, if the defendant's officers should not be satisfied with the appearance of the wall as finished by his contractor, they could tear down his finish, and make it to suit themselves. The plaintiff's contractor

thereupon completed the wall as he had commenced it. And the plaintiff thereupon recalled his permission to the defendant to change it. The latter, however, "directed the brick-masons to carry up the brick pilaster for the second and third stories to correspond with the new iron pilaster (of the first), and for the same width, and corbeled it out to form panels on the face of the pilaster to correspond with the others." And in order to do this, the plaintiff's finish on his half of the wall had to be taken down, which was done by the defendant's workmen. The plaintiff complains that the result is, that his two walls do not correspond, and that his building "looks like a cow with one horn."

In our opinion the written contract contains nothing with reference to the question of the finish of the face of the wall. It did not give to defendant the right to put any particular finish or ornamentation on the plaintiff's half thereof. Each party owned the half of the wall which was upon his land, subject to an easement in the other. This easement was merely to use the wall as a party-wall between the two buildings. In the absence of a special agreement to that effect, the defendant had no more right to have the plaintiff's half finished in accordance with his views than the plaintiff had to have the defendant's half finished in accordance with his views.

The main question, therefore, upon which the case turned was, whether there was such a special agreement. The trial court found that there was not. And we cannot say that this finding was not sustained by the evidence. It is admitted that there was an agreement with reference to the iron pilaster of the first story. But this did not necessarily extend to the brick and stucco work above it. It may be conceded that it would have been more symmetrical for the defendant's building, and more in accordance with the rules of architecture, to have the pilaster of the upper stories correspond in width with

that of the lower.   But this is not a sufficient ground to imply a contract therefor.   As above stated, half of the wall belonged to the plaintiff, and he could finish it as he liked.   The defendant had to show a contract allowing it to interfere with the plaintiff's half of the wall.   And it failed to do this.   There was no definite evidence of a contract except as to the first story.   The plaintiff swears that there was no contract except as to the first story; and the testimony of the defendant's architect seems to corroborate this.   Taking all the circumstances together, we cannot say that the finding that there was no contract except as to the first story should be set aside.

The defendant, however, relies upon the parol license given by the plaintiff to tear down his finish if it should not prove satisfactory.   The finding in this regard is as follows: "The plaintiff told the defendant *to wait* until it was done, and then if he did not like it he would allow it to be taken down and finish it to suit himself, but the court finds that *before the defendant attempted to remove the finish* placed upon the wall by plaintiff, *the plaintiff revoked said license."*   There was evidence to sustain this finding of revocation.

And we see no room for the argument made for the defendant that the license was executed before it was revoked, even if it be assumed that under the circumstances this would make a difference.   The license was to tear down the finish, and the revocation was before the tearing down began.   The finish which the defendant put on, in the place of the plaintiff's, could not have been put on until after the plaintiff's was removed, which was after the revocation.   The assumption of the defendant's counsel seems to be that there was some preliminary work done upon the faith of the license.   But assuming that the plaintiff's telling the defendant to "wait" authorized it to go on with the preliminary work, it is sufficient to say that the evidence does not show any preliminary work.   One of the defendant's witnesses

says: "When the plaintiff went on to finish the half of the party-wall, defendant had not commenced to cement. The brick-work was all laid out for it." We do not understand precisely what the "laying out" of the brickwork involved. But it seems, from the evidence, that the additional brick-work would only cost "two or three dollars extra." When a party relies upon expenditure upon the faith of a license as an estoppel, the evidence of the facts constituting the estoppel should be clear, and the expenditure should not be trivial in amount.

The learned counsel have not questioned that the acts of defendant amounted to a taking possession of the plaintiff's half of the wall, so as to warrant a judgment for the return of possession. And following the lead of counsel, we have assumed that the judgment is proper in this regard; but we express no opinion in relation thereto.

We therefore advise that the judgment and order appealed from be affirmed.

FOOTE, C., and BELCHER, C. C., concurred.

THE COURT. — For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.