[No. 12609.    In Bank. — December 15, 1890.]

## J. H. FLICKINGER, RESPONDENT, v. ISAIAH SHAW ET AL., APPELLANTS.

EASEMENT — RIGHT OF WAY FOR IRRIGATING DITCH — CONTRACT OF SALE — LICENSE — REVOCATION. — Where the plaintiff and his assignor entered into a parol agreement with defendant, by the terms of which they were to receive a conveyance of a right of way for an irrigating ditch over defendant's land, and of one half of the water to be diverted thereby, the plaintiff and his assignor to survey and excavate the ditch and keep it in repair, and the ditch, when completed, to be used for the equal benefit of both the contracting parties for the purpose of irrigation, and the ditch was constructed and kept in repair by the plaintiff and his assignor, and used by both parties, the agreement is essentially one of purchase and sale, and the defendant will not be allowed to treat the transaction as a mere parol license which he may revoke after the work has been done and money expended by the other parties under the contract.

ID. — SPECIFIC PERFORMANCE — ORAL AGREEMENT FOR EASEMENT — PART PERFORMANCE — STATUTE OF FRAUDS. — Equity will execute every agreement for the breach of which damages may be recovered, where an action for damages would be an inadequate remedy; and where there has been such a part performance of an oral agreement for an easement upon land that it would be sanctioning fraud to refuse its specific performance, the statute of frauds does not prevent an enforcement of the agreement.

ID. — EXECUTED LICENSE — EXPENDITURE BY LICENSEE — REVOCATION — TRUST EX MALEFICIO. — An executed license may become an agreement for a valuable consideration, and where the revocation of the license would operate as a fraud upon the licensee, who has expended money and made improvements upon the faith of it, equity will hold the owner of the land as a trustee *ex maleficio* to prevent such revocation.

ID. — RIGHT OF WAY — EQUITABLE TITLE — INJUNCTION. — Where nothing remains to be done to complete such contract except the execution of a conveyance to the plaintiff of the right of way for the irrigating ditch, and of a proper proportion of the water diverted thereby, the plaintiff has a perfect equitable title in the ditch and water, which equity will protect by injunction, as readily and fully as it would protect the legal title.

APPEAL from a judgment of the Superior Court of Santa Clara County.

The action was brought to obtain a judgment that plaintiff is the owner of a ditch, and the right of way therefor, over the lands of the defendant Isaiah Shaw;

and the owner of the use of eleven hundred inches of the water of Penetencia Creek, in Santa Clara County, to be used through said ditch, measured under a four-inch pressure; and that plaintiff is the owner of all the waters of Penetencia Creek, after supplying said ditch to the extent of four thousand inches of water under a four-inch pressure, to be used through a second ditch, located on plaintiff's land below the land of defendant Shaw; and to enjoin interference with the flow of water into said ditches, or either of them. The court finds the following facts: The plaintiff, J. H. Flickinger, and one C. Smith, were the owners of a tract of land of seventy-four acres bounded upon the northeast by a tract owned by the defendant Isaiah Shaw. Penetencia Creek flowed as a natural stream along the eastern boundary of the land owned by Shaw. In November, 1880, it was orally agreed between Shaw and Flickinger and Smith that Flickinger and Smith should at their individual expense survey, excavate, and keep in repair a ditch by which the waters should be diverted from said creek, and by which they could be used for irrigating alike the land of Shaw and that of Flickinger and Smith; Shaw to have the use of one half of the water so diverted, and that Flickinger and Smith should have the other half, and the right of way over the land of Shaw for the ditch, and one half of the water to be diverted thereby. On the 27th of December, 1880, the survey was made, and the ditch located to conform to Shaw's requests, and was so constructed as to convey all the waters usually running in the creek for the equal use of Shaw and of Flickinger and Smith, at an original cost of about four hundred dollars to Flickinger and Smith, and at a further cost to them of two hundred dollars for keeping it in repair. The capacity of the ditch was increased by them so as to finally carry eleven hundred inches of water. The ditch was used jointly according to the agreement until December 25, 1885.

After its completion, it was agreed that the waters should be appropriated by posting a notice, and that Shaw should convey to Flickinger and Smith a conveyance of one half thereof, and of the right of way over his land; but Shaw posted the notice in his own name in December, 1881, and never conveyed to Flickinger and Smith. Before December, 1885, the plaintiff, Flickinger, acquired all the rights of C. Smith in the ditch and water right, and also acquired from defendant Shaw a tract of land fronting on the creek, below the head of the ditch, and Shaw then conveyed to Flickinger a right of way across his land for a ditch leading to the tract so conveyed; and in October, 1885, Flickinger posted a notice claiming four thousand inches of the water of the creek to be conveyed to the lands so purchased from Shaw, and other lands not included in the tract originally owned by Flickinger and Smith, and constructed another ditch to said lands, which was not intended as a substitute for the ditch originally constructed under the agreement, but for the purpose of utilizing what water might at any time flow down the creek in excess of the capacity of the upper ditch. In December, 1885, Shaw fitted up the ditch by which the water had been conveyed to the land of Flickinger and Smith, and enlarged the capacity of the upper ditch on his own land to two thousand inches, and denied the right of plaintiff to any of the water so appropriated. The court decreed that plaintiff is entitled to the flow of eleven hundred inches of water through the upper ditch as originally constructed to the lands of Flickinger and Smith, to be equally divided between plaintiffs and defendant, and that plaintiff is the owner of one half of the ditch, and is entitled to maintain it in repair, and is entitled to all the surplus water of the creek above eleven hundred inches to the extent of four thousand inches, and enjoined the interference by defendant with the rights of the plaintiff. The further facts are stated in the opinion of the court.

*T. II. Laine,* and *Richards & Welch,* for Appellants.

The estate claimed by Flickinger is an easement and estate in real property, or a servitude. (Civ. Code, secs. 801–811; Washburn on Easements ,and Servitudes, 3d ed., 3.) No easement can be created or transferred except by operation of law or instrument in writing. (Civ. Code, sec. 1091; Code Civ. Proc., secs. 1971, 1973, subd. 5; Bennett's Goddard on Easements, 3, 4, 87, 88–94, 283, 284; *Emerson* v. *Bergin,* 76 Cal. 201.) A parol agreement for an easement is a mere license, revocable at pleasure of the licensor. (Goddard on Easements, 472–475; *Morse* v. *Copeland,* 2 Gray, 302.) The only interest which Flickinger ever had or acquired in the ditch, or in the water flowing therein, was that of a mere licensee, exercising from year to year a license revocable at any time by Shaw. (Washburn on Easements, 3d ed., 398; *Barbour* v. *Pierce,* 42 Cal. 657; *Hihn* v. *Spreckels,* 59 Cal. 315; *Haven* v. *Seeley,* 59 Cal. 494; *Emerson* v. *Bergin,* 71 Cal. 335.) The license is revocable, even though the licensee has made extensive improvements under his license. (See Goddard on Easements, 472, 473, and cases cited; *Houston* v. *Laffes,* 40 N. H. 505; *Mason* v. *Holt,* 1 Allen, 45.) The rule sometimes laid down in the books, that a license executed cannot be countermanded, is not applicable to licenses which, if given by deed, would create an easement, but only to licenses which, if given by deed, would extinguish or modify an easement. (Goddard on Easements, 472, and cases cited.)

*J. C. Black,* for Respondent.

A parol agreement for an interest in land may be specifically enforced when partly performed. (Civ. Code, sec. 1741.) Rights under an oral contract, acquired by possession, and improvements of a permanent character, cannot be ignored, where irreparable injury and positive fraud would be the result. (*McCarger* v. *Rood,* 47 Cal.

138; *Clark* v. *Clark*, 49 Cal. 586; *Manly* v. *Howlett*, 55 Cal.
94; *Karns* v. *Olney*, 80 Cal. 100; 13 Am. St. Rep. 101;
*Freeman* v. *Freeman*, 43 N. Y. 38; 3 Am. Rep. 657; *Robbins* v. *Robbins*, 89 N. Y. 253.) The rights acquired by
respondent are such that compensation in damages cannot be made, and none are offered. If a license, it is of
such nature and so mutually acted upon as to be irrevocable. (See 7 Wait's Action and Defenses, p. 208, sec. 8,
and authorities cited; *Parke* v. *Kilham*, 8 Cal. 79, 80; 68
Am. Dec. 310; *Bowman* v. *Cudworth*, 31 Cal. 153; *Davis*
v. *Davis*, 26 Cal. 39; 85 Am. Dec. 157.)

THORNTON, J. — That the object to be attained by the
agreement between Flickinger and Smith on the one
hand, and the defendant (Shaw) on the other, was to acquire by purchase a right of way over the land of the
latter for the ditch constructed by the first-named parties is, in our judgment, a fair legal deduction from the
facts disclosed in this case. Flickinger and Smith were
seeking to acquire something more than a mere license
or authority to do a particular act or series of acts on
another's land without possessing any estate therein
(*Potter* v. *Mercer*, 53 Cal. 673), and which right might at
any time be revoked by the licensor.

In this case, the agreement between the parties is, in
substance, that Shaw gives the right of way for a ditch
over his land; that Flickinger and Smith survey and
excavate the ditch, and keep it in repair, and the ditch,
when completed, to be used for the benefit of all the contracting parties in irrigating their respective tracts of
land. Let it be observed (and it is so found) that Shaw
agreed that Flickinger and Smith should have a conveyance of and give a right of way over his land for the
ditch, and one half of the water to be diverted thereby.

The above facts clothe the transaction with the character of a purchase by one party, and sale by the other,
of a right of way for a ditch. The license under which

Flickinger and Smith entered was vested in them by a contract of purchase for a valuable consideration.

Under this agreement, Flickinger and Smith did survey and construct the ditch and kept it in repair, and both parties made use of it for the purpose for which it was constructed, viz., the irrigation of their lands. Thus the agreement between the parties was executed. The license here given to Flickinger and Smith was one for the acquisition of an interest in land by purchase of Shaw, for which they paid by doing what they had agreed to do. After the ditch was constructed, it was used by all parties under the agreement for four or five years.

Now, it would be highly inequitable, after the work has been done and money expended by Flickinger and Smith, to allow Shaw to recall his consent, fill the ditch, and cut Flickinger, who has succeeded to all the rights of Smith under the agreement above stated, off from the use of the ditch and the water flowing therein; nor should any such proceeding, in our view, be upheld by a court of justice.

In *Rerick* v. *Kern*, 14 Serg. & R. 271, 16 Am. Dec. 497, a case in some respects similar to the one under consideration, came before the supreme court of Pennsylvania. The case was one concerning the legal effect of an executed license. It was an action on the case to recover damages for diverting a watercourse, by which the plaintiff lost the use of his saw-mill. The facts were as follows: Kern, the plaintiff below, being about to erect a saw-mill on a stream designated as the right-hand stream, a better seat for the mill was found by his mill-wright, on what was termed the left-hand stream. Kern thereupon applied to Rerick for permission to turn the water of the other stream into the left-hand stream, which was granted. In consequence of this permission, Kern built the mill on the left-hand stream. The mill was rendered a third more valuable by the union of the two streams than it

would have been with the right-hand stream alone.
No deed was executed, nor was any consideration given,
but Kern, in consequence of the permission given by
Rerick, built a very good mill, which did a great deal
of business, and which he would not have built on the
left-hand stream if the permission had not been given.

In this case, as will be observed, there was no element
of purchase.

The defense set up was, that the permission to Kern
was a mere license which was revocable under all cir-
cumstances and at any time. To this it was said, in the
unanimous opinion of the court, by Gibson, J.: " But a
license may become an agreement on valuable considera-
tion, as where the employment of it must necessarily
be preceded by the expenditure of money; and when the
grantee has made improvements or invested capital in
consequence of it, he has become a purchaser for a valu-
able consideration. Such a grant is a direct encourage-
ment to expend money, and it would be against all
conscience to annul it ,as soon as the benefit expected
from the expenditure is beginning to be perceived. Why
should not such an agreement be decreed in specie?
That a party should be let off from his contract, on pay-
ment of a compensation in damages, is consistent with
no system of morals but the common law, which was in
this respect originally determined by political considera-
tions, the policy of its military tenures requiring that
the services to be rendered by the tenant to his feudal
superior should not be prevented by want of personal
independence. Hence the judgment of a court of law
operated on the right of a party, and the decree of a
court of equity on the person. But the reason of this
distinction has long ceased, and equity will execute every
agreement for the breach of which damages may be re-
covered, where an action for damages would be an in-
adequate remedy."

The same rule has been applied in case of an executed license in *Pope* v. *Henry*, 24 Vt. 565, and also in in *Swartz* v. *Swartz*, 4 Pa. St. 358; 45 Am. Dec. 697.

The principle on which these cases proceed is, as was said in *Swartz* v. *Swartz*, 4 Pa. St. 358, 45 Am. Dec. 697, "that the revocation would be a fraud; and that to prevent it a chancellor would turn the owner of the soil into a trustee *ex maleficio.*" The case under consideration presents a stronger ground of relief then either of these above cited.

Principle and authority, in our judgment, show that the plaintiff has rights here which should be protected by injunction. The facts show plaintiff's right to a specific performance. The statute of frauds is not in the way. There has been part performance, and possession under the agreement, as far as the plaintiff could obtain possession, and though the agreement rests in parol, under the circumstances above mentioned, a party is entitled to a specific performance. (*Rerick* v. *Kern*, 14 Serg. & R. 272; 16 Am. Dec. 497.) To refuse specific performance under the circumstances would be to sanction fraud, and to allow a statute passed for the prevention of frauds to become the means of accomplishing a fraud.

To complete the purchase, nothing remains to be done except the execution of a conveyance of the right of way and a proper proportion of the water to Flickinger. His equity to a deed is perfect (*Morrison* v. *Wilson*, 13 Cal. 494; 73 Am. Dec. 593); and when such is the case, a court of equity, in accordance with its familiar rules considering that as done which ought to be done, will protect it as readily and as fully as a legal title. If the legal title would be protected by an injunction, a perfect equitable title should also.

In conformity with these views, in our opinion the judgment should be affirmed.

Beatty, C. J., Fox, J., and Paterson, J., concurred.

McFarland, J., dissented.

Rehearing denied.