[Civ. No. 2466.   Third Appellate District.—December 5, 1922.]

## J. J. CAIRNS, Respondent, v. M. C. HADDOCK, Appellant.

[1] EASEMENTS—PAROL LICENSE TO CONSTRUCT DITCH—EXECUTION.—
A parol license to construct an irrigating ditch over the licensor's land, which is executed by the construction of the ditch by the licensee with the expenditure of a large sum of money, becomes in all essentials an easement upon the licensor's land, continuing for such length of time as the use of the ditch may continue.

[2] ID.—PAROL LICENSE—EVIDENCE—FINDING.—In this action to restrain defendant from obstructing a ditch which was used by plaintiff in conducting water across defendant's land, and which had been so used by plaintiff for over six years, notwithstanding the court struck out the testimony of the person who had occupied defendant's land at the time the license was claimed to have been granted and was farming it for his father, and who had testified as to what his father told him of a conversation had with defendant's predecessor wherein the latter gave permission to construct the ditch, there was sufficient other testimony showing that such witness took the matter up with his father and defendant's predecessor and they authorized him to assure plaintiff that he could have the right of way upon certain specified terms which were accepted by plaintiff, and that testimony was sufficient to support a finding that there was a parol license to construct the ditch.

[3] ID.—ENTRY UNDER CLAIM OF RIGHT—EVIDENCE—ADVERSE POSSESSION.—Plaintiff having believed that by the payment of the amount specified by the agent of defendant's predecessor he acquired the right to construct the ditch in question, and with that understanding he having entered upon the property and made the improvement at a large expense, and a short time after having begun the work he having received a deed of a right of way which he understood to be of the ground upon which the ditch was constructed, and he having exercised acts of ownership over the ditch and the structures constructed upon it for more than five years under a claim of right of way and notoriously and with the knowledge of defendant's predecessor, he acquired a title by adverse possession.

[4] ID.—PAYMENT OF TAXES—WHEN REQUIRED.—The ditch not having been separately assessed, it was not incumbent upon plaintiff to show payment thereof, in addition to the payment of the taxes assessed upon his land to which the right of way was

3.   What is essential to adverse possession, notes, 28 Am. St. Rep. 158; 88 Am. St. Rep. 701.

appurtenant. It is only the payment of taxes levied and assessed which, by section 325 of the Code of Civil Procedure, is made a condition for acquiring title by adverse possession.

[5] ID.—INNOCENT PURCHASER—NOTICE OF DITCH.—Having acquired title to the property over which plaintiff's ditch ran after the right of plaintiff to the easement had become vested, and the ditch and its headworks having been upon the land when defendant bought it and being openly used by plaintiff, defendant was not justified in accepting his predecessor's statement that she had not signed a right of way, but he was charged with notice of whatever rights plaintiff had.

[6] ID.—DEED AS EVIDENCE—LIMITED PURPOSE OF ADMISSION.—The trial court did not commit error in admitting in evidence a deed from defendant's predecessor to plaintiff, which deed, because of an error in description, did not convey to plaintiff a right of way over the land where the ditch was constructed, where that deed was offered for the limited purpose of showing that defendant's predecessor, who did not know plaintiff and who never had any business with him except with reference to such right of way, acknowledged receiving from him a specified sum of money, at or about the time he stated he paid that sum for the right of way, and for the further purpose of showing when plaintiff commenced to assert his title to the easement.

[7] ID.—OWNERSHIP—PROOF—ELECTION.—Plaintiff having alleged in his complaint that he "is now, and for more than six years last past has been the owner and in the actual possession of that certain water ditch . . . and the weirs and gates . . . at the head of said ditch, and of the right of way and site upon which said ditch, weirs and head gates are located," and not having been put to an election as to the source of his title, he was entitled to support such general allegation of ownership by showing a grant, an executed parol agreement, or title by prescription.

[8] ID.—CHARACTER OF RIGHT—VARIANCE.—There was no fatal variance between the evidence, which showed that plaintiff owned merely an easement, and the pleadings and findings, which were to the effect that plaintiff was the owner of the ditch, where it was apparent that the word "ditch" as there used meant simply a right of way for the passage of water.

APPEAL from a judgment of the Superior Court of Tulare County. W. B. Wallace, Judge. Affirmed.

The facts are stated in the opinion of the court.

Lewis H. Smith and Alva E. Snow for Appellant.

Power & McFadzean for Respondent.

BURNETT, J.—The action was to restrain defendant from obstructing a ditch which was being used by plaintiff in conducting water across defendant's land from a natural watercourse known as Elk Bayou to a certain tract of land owned by plaintiff. In the complaint it was alleged, ''That said plaintiff is now, and for more than six years last past has been, the owner and in the actual possession of that certain water ditch heading in and leading out of a certain natural water course situate in the County of Tulare, State of California, known as the Bayou, and the weirs and gates in and across said Bayou at the head of said ditch and of the right of way and site upon which said ditch, weirs and head gates are located, which right of way and site is situate in said county and state, and is more particularly described as follows to-wit'' (describing it). The answer denied ''that said plaintiff is now or at any time last past has been the owner, or in the actual possession of any water ditch heading in or leading out of any natural or other water course situate in the County of Tulare, State of California, known as the Bayou, or any water course at all, or of any weir or gate in or across any Bayou at the head of any ditch or of any right of way or site on which *any* ditch or weir or head gate is located, as described or attempted to be described in plaintiff's complaint on file herein, or otherwise or at all,'' and it was further denied that ''plaintiff is entitled to divert any water by means of the ditch described or attempted to be described in plaintiff's complaint, or otherwise, or upon any lands of plaintiff described in said complaint for any purpose whatever.''

Thus was presented the issue which was tried in the court below and found in favor of plaintiff, and the main contention herein by appellant is that the evidence fails to support said finding. The evidence is uncontradicted that respondent constructed the ditch in December, 1913, and that he used it to irrigate his land, from that time, without interruption until the eighth day of March, 1920, and he claims that he established his ownership of the right of way and the right to use said ditch for said purpose in two ways: ''First, by showing an executed parol license, or facts from which the trial court was justified in inferring the existence

of an executed parol license within the rule declared in *Flickinger* v. *Shaw*, 87 Cal. 126 [22 Am. St. Rep. 234, 11 L. R. A. 134, 25 Pac. 268], and *Stoner* v. *Zucker*, 148 Cal. 516 [113 Am. St. Rep. 301, 7 Ann. Cas. 704, 83 Pac. 808], and second, because he had also acquired title to the easement by adverse possession.''

[1] As to the first consideration no doubt the rule is as stated in the Stoner case: ''A parol license to defendant to construct an irrigating ditch over plaintiff's land, which is executed by the construction of the ditch by defendant with the expenditure of a large sum of money, beomes in all essentials an easement upon plaintiff's land, continuing for such a length of time as the use of the ditch may continue.''

[2] As to this aspect of the case, though, appellant claims that the evidence is insufficient to support the theory that there was a parol license. It appears that plaintiff's property was in charge of his son, W. S. Cairns, and the land through which the ditch was constructed was occupied by H. K. Wheeler, who was farming it for his father, J. Kittridge Wheeler, who was living in Los Angeles. Said H. K. Wheeler testified that his father and ''Clara B. Heywood had the property together. . . . Their general purpose was to get the land in condition to sell it in subdivisions. I had some negotiations with W. S. Cairns with reference to the ditch. Mr. Cairns came to the ranch and said he would like to get a ditch put through the property there so that he could divert water from the ditch that was on the property at the time, over to his property; that he understood the Wheeler ranch was to be subdivided and sold; and that he would like to get this ditch at that time, because he could not tell what trouble they might run into later on. He asked me to see what could be done about getting the right of way for the ditch and permission to get a head gate in there to divert the water. My father, J. Kittridge Wheeler, died in 1914. He came up to the ranch and said that he and Clara B. Heywood would give permission to put the ditch through the property. . . . The sum of two hundred dollars was named as the sum for which Mr. Cairns could have the right of way. . . . I know as a matter of fact that the land stood in the name of Clara B. Heywood, of record, but my father had a contract with her for a one-half interest. . . . There was no work done on the ditch until after I had told Mr.

Cairns that permission could be had from Clara B. Heywood." The testimony of W. S. Cairns was of a similar character and he added that he pointed out to H. K. Wheeler "where we wanted the ditch. We pointed out the place where the ditch now is, where this Bayou comes closest to the fence—closest to our land. . . . There was no limitation on the time that we should have the ditch there. That I would say pretty positively—no there was not, there was nothing said about it from the fact, as I told you, we were promised a deed for it." The above would be ample beyond question but the problem is complicated somewhat by the consideration that objection was made to some of the questions calling for the communication from J. Kittridge Wheeler, but the answers were received subject to the objections, and thereafter the clerk's transcript shows the following:

"Friday, July 16, 1920. Hon. W. B. Wallace, Judge.
"J. J. Cairns, Plaintiff,

v.

"M. C. Haddock et al., Defendants.

"In the above entitled cause, it is ordered that the testimony of J. Kittridge Wheeler as to what his father, H. K. Wheeler told him of a conversation had with Miss Heywood be stricken out as hearsay testimony."

It may be doubted whether this has been sufficiently authenticated as an order of the court, and it is clear that "J. Kittridge Wheeler" did not testify at all in the case; but since it is not disputed, we assume that said testimony admitted under objection was afterward excluded by the court. Nevertheless, the record shows without any objection or motion to strike out these questions and answers in the testimony of W. S. Cairns:

"Mr. Power: Now, I had reached the point with you where I asked you if you had seen Mr. Wheeler and had any conversation with him with reference to acquiring a right of way for this ditch and you stated you had gone over or pointed out the line where the ditch now is. Now I will ask you to state what was said and done between you and Mr. Wheeler with reference to getting the right of way for the ditch, the conversation you had and what you did. Just go on and state in your own way. A. Well, I went to Mr.

Wheeler and asked him about getting this right of way for a ditch and a line to the head gate. And I asked him at the time if he could give me the deed and he said no, that he could not give it to me direct. 'Well,' I says, 'who can?' And then, I do not remember now, but he told me his father and Miss Heywood would be the ones that I would have to get the deeds from and I am quite sure that he told me that Miss Heywood would be the one that I would have to get the deed from. Anyhow, after seeing and talking to Wheeler a couple of times, he promised to get the deed and he said it would be all right. Q. What was said about what you should pay for it if anything was said in that conversation, or what you should pay if you got the right of way? A. At that time he asked me what I thought would be the right consideration for the deed and I told him we would give him $200 for a right of way for a ditch and head gate. Then, later he came back and he said that would be all right, providing we would put a bridge on top of this head gate, so that they could get on to that little bit of three cornered piece of alfalfa they had in there to get their hay in and out of that tract of land. I told him that would be all right, we would do that. Q. Then what did you do with reference to building a ditch? A. We started to work on that without any deed or more right than that.''

It is a fair inference from the foregoing that Wheeler communicated with his father and Miss Heywood and they authorized him to assure Cairns that he could have the right of way upon the terms suggested and that said terms were afterward accepted by plaintiff. Even if it might be said that hearsay testimony was involved no objection was made on that ground, and it cannot be ignored as evidence in the case. Indeed, it is fairly deducible from all the facts and circumstances that an agreement for a deed was reached, and that relying upon the faith of that agreement plaintiff paid the consideration and constructed the ditch. It is of no decisive moment herein that Miss Heywood testified that she ''told Mr. Wheeler he could give him [Mr. Cairns] the right to use this until we sold the land, by putting a ditch across there, . . : that was a temporary right of way that I gave, until we sold or subdivided the land.'' In the first place, her testimony apparently did not carry conviction to the mind of the trial judge, and we cannot say that he acted

arbitrarily in rejecting her statement that the license was to be conditional. That her memory was not trustworthy is shown by her declaration that she had entirely forgotten "ever signing any paper in connection with this and I told Mr. Haddock that I never had signed a right of way when I sold him the land," whereas, on the 1st of January, 1914, she had executed a deed to Mr. Cairns of an unconditional right of way, and therein she admitted the receipt of the consideration of two hundred dollars, although denying upon the stand that she had received any money for the license. We may add that the execution of this deed without having inserted therein any limitation as to the right of way was regarded, no doubt, by the trial judge as persuasive evidence that she intended and prescribed no conditional limitation. It is true that said deed by reason of a mistake in the description of the right of way was ineffective to convey the title, but a reading of the record can leave no doubt that she thereby intended to grant absolutely to plaintiff what he is now claiming under an executed parol license. Other reasons for viewing with caution, if not distrust, her statement as to the character of the license have been suggested by respondent but we see no necessity for repeating them. Moreover, if it be assumed that she thus instructed Mr. Wheeler, there is no evidence whatever that it was so communicated to plaintiff. As far as the record shows, the only proposal which was submitted to respondent and upon which he acted was, as we have seen, an unconditional promise to convey the right of way. If Mr. Wheeler was remiss in failing to submit all the terms, Miss Heywood could hold her agent responsible, but she could not successfully question the rights acquired in good faith by plaintiff through reliance upon the representation of the agent.

[3] Again, if it may be said that the evidence of parol license is inadequate, then the situation is such as to justify a finding that plaintiff acquired a title by "adverse possession." All the facts material to such title appear in the record. Plaintiff undoubtedly believed that by payment of the two hundred dollars he acquired the right to construct said ditch. With this understanding he entered upon the property of Miss Heywood and made the improvement at a large expense. A short time after having begun the work he received a deed of a right of way which he understood to be

of the ground upon which the ditch was constructed. Regarding said instrument as constituting what had been promised him he exercised acts of ownership over the ditch and the structures constructed upon it for more than five years under a claim of right of way and notoriously and with the knowledge of Miss Heywood, as shown by her testimony, that he was using said ditch for the purpose of irrigation. His ownership was not questioned until March 8, 1920, although the ditch was constructed in December, 1913, and said deed was executed in January, 1914.

[4]  The ditch was not separately assessed so that the question of the payment of taxes does not arise, although plaintiff paid all the taxes assessed upon his land to which this right of way became appurtenant. "No taxes being shown to have been assessed, it was not incumbent upon plaintiff to show payment thereof." (*Baldwin* v. *Temple,* 101 Cal. 403 [35 Pac. 1008].)

"It is only the payment of taxes levied and assessed which, by section 325 of the Code of Civil Procedure, is made a condition for acquiring title by adverse possession." (*Smith* v. *Smith,* 21 Cal. App. 378 [131 Pac. 890].)

It would be difficult to find a case wherein the showing of adverse possession is more satisfactory than herein.

In the cases cited by appellant we find nothing inconsistent with the foregoing. They illustrate the application of well-established principles to varying situations and are of no particular assistance herein.

[5]  We can see no merit in the claim that appellant should be protected as an innocent purchaser. He acquired title to the Heywood-Wheeler property after the right of plaintiff to the easement had become vested. The ditch and its headworks were upon the land when he bought it and they were being openly used by plaintiff. Appellant was clearly charged with notice of whatever rights Mr. Cairns had, and if he chose to rely upon the statement of Miss Heywood and to make no inquiry of plaintiff he must abide the consequences.

[6]  We are satisfied the court committed no error in admitting said deed in evidence. As stated by respondent, it was not offered "as a muniment of title because the description in it was erroneous, but it was offered to show that Miss Heywood, who did not know Mr. Cairns and never had

any business with him except with reference to this right of way, and who denied even receiving any money from him, acknowledged receiving from him the sum of two hundred dollars, at or about the time he states he paid that sum for the right of way described in the complaint. . . . It was also competent for the purpose of showing when Mr. Cairns commenced to assert title to the easement.'' Thinking as he did that it conveyed the right of way in question, it would necessarily follow that when the deed was delivered he would begin to claim and assert ownership therein. The deed was offered and received in evidence for the limited purpose thus suggested and was no doubt so considered by the court.

In *Pierson* v. *McCahill*, 21 Cal. 123, cited by appellant, parol evidence was received, over objection, to show that a certain provision was omitted from a written agreement. The ruling was held to be erroneous because the mistake was not averred in the answer and that the effect of the parol testimony was to vary the terms of a written instrument. The supreme court said: ''Until reformed, the instrument must stand as the contract of the parties, and it was error to allow the defendant to prove a different contract or to give evidence of an intention different from that actually expressed.'' Manifestly, we have no such instance before us.

The case of *Van Slyke* v. *Broadway Ins. Co.*, 115 Cal. 644 [47 Pac. 689], also cited by appellant, is no nearer the mark. Therein it was held that parol evidence was inadmissible to aid a written instrument which was entirely void for uncertainty.

[7] We understand that plaintiff was not put to an election as to the source of his title. He had alleged in his complaint, as we have seen, that he ''is now, and for more than six years last past has been the owner and in the actual possession of that certain water ditch . . . and the weirs and gates in and across said Bayou at the head of said ditch, and of the right of way and site upon which said ditch, weirs and head gates are located,'' etc. Under the liberal system of pleading which prevails in our practice this general allegation of ownership was sufficient and warranted an effort to support it by showing a grant, an executed parol license or title by prescription. Indeed, plaintiff might offer evidence of all these conditions and prevail if proof of any was satisfactory.

[8]  At the oral argument it was suggested by appellant that the complaint contemplated ownership in fee of the strip of land in controversy and the findings corresponded therewith, but that the evidence at most showed only an easement and, therefore, a fatal variance occurred.  In this appellant is in error.  It is true that said allegation and findings are that plaintiff is the owner of the ditch, but it is clear that the word *ditch* as there used means simply "a right of way for the passage of water."  (*Smith* v. *Hampshire,* 4 Cal. App. 8 [87 Pac. 224] ; *Conover* v. *Atlantic City Sewerage Co.,* 70 N. J. L. 315 [57 Atl. 897].)  Indeed, the expression is qualified by the following phrase and "of the right of way and site," etc., so that there can be no doubt that only an easement was found to exist in favor of plaintiff.

We feel satisfied that the decision of the lower court is just and legal and the judgment is therefore affirmed.

Hart, J., and Finch, P. J., concurred.