[Civ. No. 2651.   Third Appellate District.—December 24, 1923.]

A. RICIOLI, Respondent, v. J. A. LYNCH et al., Appellants.

[1] EASEMENTS—TITLE BY PRESCRIPTION—REBUTTAL OF PRIMA FACIE CASE—EVIDENCE.—In this action to quiet title to an easement for a road, the evidence having amply established that there was an open, visible, continuous, and unmolested use of the road for more than forty years prior to the commencement of the action, a *prima facie* title by prescription was established; and the determination by the trial court that such *prima facie* case was not

---

1. Acquisition of easement by prescription, notes, 57 **Am. St. Rep.** 744; 44 **L. R. A. (N. S.)** 89.

overcome by the testimony of a witness as to what was said in a conversation between the predecessors of the parties which took place some forty-five years before the trial, at a time when the witness was but fifteen years of age, was conclusive on appeal.

[2] ID.—IRREVOCABLE LICENSE.—Conceding that the proposition of defendants' predecessor that the land owners above his lower ranch "come over and help gravel the road and all travel it" constituted a mere permission to use the road, when those persons accepted the proposition and worked for two or three months on the road with men and teams, the license became irrevocable.

[3] ID.—ADVERSE USE—PRESCRIPTIVE TITLE.—Adverse use of such road for five years after the license became irrevocable was sufficient to establish title by prescription.

[4] ID.—CHANGE OF COURSE OF ROAD—RIGHTS UNAFFECTED.—A tenant of plaintiff and a tenant of defendants, with the permission and consent of defendants, having changed the course of the road for a distance of about two hundred yards to avoid a steep hill, such change did not affect plaintiff's right to use the road, including the new section.

[5] ID.—IMPROVEMENT AND USE OF ROAD—GENERAL INVITATION—ACCEPTANCE.—In this action to quiet title to an easement for a road, it was not error to permit an owner of land in the neighborhood, but who was not a party to the action, to testify that defendant's predecessor proposed to him and others that they "help gravel that road and all travel it," where it was apparent that defendants' predecessor had in mind the graveling and use of the road by all the neighbors, including plaintiff's predecessor, and the evidence showed that all the neighbors, including plaintiff's predecessor, graveled the road, used it in common, and made repairs thereon from year to year as needed.

APPEAL from a judgment of the Superior Court of Sonoma County. R. L. Thompson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Geary & Geary for Appellants.

Gil P. Hall, W. F. Cowan and A. W. Hollingsworth for Respondent.

FINCH, P. J.—The plaintiff had judgment and the defendants appeal.

The complaint alleges: "That for more than forty years last past continuously, the predecessors in interest of plaintiff and this plaintiff have been and are now the owners and

entitled to the possession of an easement which is annexed
and appurtenant to the lands of plaintiff of a road leading
from the said lands of plaintiff across the lands of defend-
ants and that the lands of the said defendants are sub-
servient to the said way and easement, . . . [here follows
a description of the road by courses and distances] and
for more than forty years last past the said way and ease-
ment has been open, laid out, and used by the plaintiff and
his predecessors in interest continuously and under a claim
of right and with right openly, notoriously, uninter-
ruptedly, and adversely to the said defendants and their
predecessors in interest and each and every of them.'' The
answer denies the foregoing averments of the complaint
and alleges that the road is a private road maintained by
the defendants ''for their special and particular use and
not otherwise,'' and that plaintiff and his predecessors in
interest, upon payment of an annual fee of ten dollars, have
been allowed to use the road ''by the permission and cour-
tesy and consent'' of defendants and their predecessors in
interest and not otherwise. The court found in accordance
with the allegations of the complaint and, further, that for
more than five years prior to the commencement of this
action the plaintiff had used said road.

The defendants and their predecessors in interest, at all
times herein mentioned, have owned two tracts of land,
known as their upper and lower ranches. Since the year
1876 the plaintiff and his predecessors in interest have
owned a large tract of land above defendants' lower ranch
and during all that time up to October, 1921, have traveled
the road in controversy. The road enters the lower ranch
from a county road and runs past the defendants' residence
up to that of plaintiff and to the residence on the upper
ranch. The road has always been used also by defendants
and their tenants and by a few others owning land above
the lower ranch. The lands of defendants were owned by
their father, John Lynch, at all times herein mentioned, up
to his death in 1915, and defendants have been the owners
thereof since. Plaintiff's land was acquired by Nick Nisson
in the year 1876, and at his death in 1899 it passed to his
heirs who, in 1913, sold the land to plaintiff. The road in
controversy is about three miles in length, two miles thereof
being below the Lynch residence on the lower ranch and

one mile above. It was in existence from the residence
down to the county road prior to the year 1876. In that
year Nick Nisson put a gate in the line fence between his
land and the lower ranch, since which time the road has
been traveled for its entire length as stated. The course
of the road is through adobe soil and, about 1887 or
1888, John Lynch requested the persons living above the
lower ranch who used the road to help gravel it. One wit-
ness, Mark Harden, testified: "Mr. Lynch himself came
to all of us and asked us to come over and help gravel that
road, and all travel it. And we went over there, and we
worked that road, we worked for two or three months the
first year with men and teams, and we graveled every bit
of that road, Mr. Nisson and us, . . . and all of us turned
out and traveled that road. . . . And we have traveled that
road ever since and we have worked it every year except
the last. couple of years, . . . and kept it up and kept it in
good condition. . . . Mr. Nisson and myself and my brother,
all of us, we went to Mr. Lynch and talked to him and got
him to put those patent gates up, and we agreed to pay so
much a year towards keeping those gates up. . . . We
settled on five dollars a year on the start, and as the gates
grew older, Mr. Lynch charged us more. . . . I really never
held any claim to the road, but still I always felt as though
I had the right to travel it because I have done an awful
lot of work on there. Three years ago we furnished men
and horses for two weeks on that road to help fix it, and
haul gravel over it, and I always felt as though I was en-
titled to travel it, but I did not claim to own it. . . . Be-
fore this road was graveled we traveled through there, we
hauled blocks through there ten years before that, . . .
without consent and without objection, and without paying
anything and without any opposition in the world. . . .
I don't know of anybody that has ever asked permission,
and I don't know of anybody that has been refused. As
long as Mr. Lynch lived, he never said a word, and nobody
else had ever said a word to me." Other witnesses for plain-
tiff gave similar testimony. The evidence shows without
conflict that plaintiff and his predecessors in interest and
their tenants helped to gravel the road and keep it in repair.

Eric Nisson, a brother of Nick, testified that at one time
Nick said he had "permission" to travel the road, had the

"privilege to go through"; that witness did not know whether Nick said "he had the privilege to go through or the right to go through." Defendant J. A. Lynch, who was born in 1861, testified that in the year 1876 Nick Nisson "asked father's permission to go through and use the Lynch road . . . and told him how he would care for the road and put in gates and that father would suffer no loss from his going through. . . . He [Lynch] at last consented. . . . And father says: 'Very well, Mr. Nisson, I will object to your hauling in the heavy season, for if I did, I would soon have no fields.' . . . He [Nisson] commenced [using the road] the second day afterwards. . . . He had to do a little work to get over the line fence where he put in a gate. . . . Mr. Layton Harden and Mr. Mark Harden began to use it, I think in 1883 or 1884. Permission was first asked by Layton Harden, and a little while after that by Mark Harden. . . . I remember Mr. Thorp making blocks . . . on the Jeff Harden Place . . . in the early eighties. . . . He used the Lynch road. . . . It was outside teams that were hauling the rock . . . and father, for protection, charged for hauling the rocks, I think by the thousand." The witness further testified that he never heard his father say anything about using the road except to Nisson, as stated, but that the neighbors above the lower ranch who used the road paid an annual road fee for the privilege. Witnesses for plaintiff testified that such annual fees were not paid for the use of the road but for the maintenance of the patent gates. This annual fee was first fixed at five dollars for each user of the road and later raised to ten dollars, and after the death of John Lynch it was increased to fifteen dollars for at least some of the users.

[1] Appellant contends that the evidence is insufficient to support the findings, in that it shows respondent and his predecessors in interest were mere licensees. It must be assumed, in support of the findings, that the annual fees referred to were paid for the maintenance of the gates and not for the use of the road. The evidence amply establishes that there was an open, visible, continuous, and unmolested use of the road for more than forty years prior to the commencement of the action. As said in *Fleming* v. *Howard,* 150 Cal. 28, 30 [87 Pac. 908], "under these circumstances it will be presumed that the use was under a claim

of right and adverse, and a *prima facie* title by prescription is thereby established, . . . 'A presumption that the use was under a claim of right and adverse arises from an undisputed use of an easement for established period of prescription; and the burden is upon the party alleging that the use has been by virtue of a license or permission, to prove that fact by affirmative evidence. . . . Where an open and uninterrupted use of an easement for a sufficient length of time to create the presumption of a grant is shown, if the other party relies on the fact that these acts or any part of them were permissive, it is incumbent on such party, by sufficient proof, to rebut such presumption of a non-appearing grant; otherwise the presumption stands as sufficient proof, and establishes the right.' (Jones on Easements, sec. 186.)'' The determination by the trial court that such *prima facie* case was not overcome by the testimony of a witness as to what was said in a conversation which took place forty-five years before the trial, at a time when the witness was but fifteen years of age, is conclusive on appeal. [2] If it be contended that the proposition of John Lynch in 1887 or 1888 that the land owners above the lower ranch ''come over and help gravel the road, and all travel it'' constituted a mere permission to use the road, the obvious answer is that, when those persons accepted the proposition and worked for two or three months on the road with men and teams, the license became irrevocable. (*Miller & Lux* v. *Kern County etc. Co.*, 154 Cal. 785 [99 Pac. 179]; *Stoner* v. *Zucker*, 148 Cal. 516 [113 Am. St. Rep. 301, 7 Ann. Cas. 704, 83 Pac. 808]; *Irrigated Valleys L. Co.* v. *Altman*, 57 Cal. App. 413 [207 Pac. 401]; *Stepp* v. *Williams*, 52 Cal. App. 237 [198 Pac. 661].) [3] Adverse use for five years after the license thus became irrevocable is sufficient to establish title by prescription. (*Irrigated Valleys L. Co.* v. *Altman, supra; Cairns* v. *Haddock*, 60 Cal. App. 83 [212 Pac. 222]; *Myers* v. *Berven*, 166 Cal. 484 [137 Pac. 260].)

[4] A tenant of plaintiff and a tenant of defendants, with the permission and consent of defendants, recently changed the course of the road for a distance of about two hundred yards to avoid a steep hill. It is not perceived that the plaintiff's right to use the road, including the new section, is affected by such change.

[5]  Nick Nisson was not present when, in 1887 or 1888, John Lynch proposed to Mark Harden and others that they "help gravel that road and all travel it." Appellant urges that it was prejudicial error to admit the testimony. Considered as an isolated fact, the terms upon which an owner of land gives one person a right of way through it is not evidence that he made the same terms with another person who is shown to have used the way. The fact in question here, however, was not isolated. From the whole testimony of the witness and the subsequent conduct of all the parties concerned it is apparent that Lynch had in mind the graveling and use of the road by all the neighbors above the lower ranch. After relating the conversation with Lynch, Harden testified as follows: "Q. Did Mr. Lynch at that time mention Mr. Nisson? A. Yes. . . . He said: 'Now, supposing we all turn in, we are all neighbors here, and we all turn in and gravel this road of mine, and have one good road out.' And we said all right, we would do that, and he went to see Nisson and the Nisson came out and our team came out, and Mr. Lynch's teams came out and we graveled that road." The evidence shows that such neighbors, including Nisson, together with Lynch graveled the road, used it in common, and made repairs thereon from year to year as needed until the defendants closed it shortly before the trial. Nisson and his successors in interest paid the same annual fees for maintenance of the patent gates across the road as Harden and other neighbors. Nisson and Lynch are both dead and there is no direct evidence of what was said when the latter went to see the former relative to graveling and using the road. Under such circumstances it was not error to admit the evidence of which complaint is made. It is not to be presumed that Nisson furnished men and teams for two or three months to gravel the road without some understanding as to his right to use it.

The judgment is affirmed.

Hart, J., and Plummer, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 21, 1924.