[Sac. No. 6082. In Bank. Jan. 18, 1952.]

CHARLES M. COOKE et al., Respondents, v. ANTONIO RAMPONI et al., Appellants.

Earl C. Berger for Appellants.

Geary, Spridgen & Moskowitz for Respondents.

SPENCE, J.—Defendants appeal from a judgment decreeing plaintiffs' ownership of an easement over defendants' land and enjoining defendants from interfering in any manner with plaintiffs' use and enjoyment thereof. The propriety of this judgment is not open to dispute upon the application of equitable principles.

In 1937 plaintiffs purchased approximately 160 acres of land in Sonoma County from one Herbert Tracy. The only usable roadway permitting access to plaintiffs' property from a public highway, the Lovell Valley Road, was a dirt and gravel road which crossed adjoining property then owned by the State of California and used as a part of the Sonoma State Home. The latter property, acquired by the state in 1920, consisted of some 200 acres; the state in the early part of 1944 conveyed it to Gerald Foster, and in August of that same year Foster conveyed it to defendants. The roadway in question, connecting plaintiffs' property with the Lovell Valley Road and crossing defendants' land, was in existence as early as 1886. It was used by plaintiffs' predecessors' in interest until 1907, when Tracy acquired the property and began to use another roadway which was opened to a different public highway and was called the Tracy Road. Use of this

latter road was abandoned by Tracy in 1920, about the time when the state acquired title to the property now owned by defendants, and travel over the older route, the roadway in question, was again established, and has continued, as the exclusive means of access to plaintiffs' property from the public highway. The Tracy Road has since fallen into complete disrepair and has not been used.

Just prior to plaintiffs' purchase of the property, plaintiff Charles M. Cooke addressed a letter to the Department of Institutions of the State of California inquiring as to the use of the roadway crossing the state's property. The deputy director replied that the state had never objected to the use of the roadway by the prior owner of the adjoining property and would likewise make no objection to the Cookes' use thereof. Soon after receiving such advice, plaintiffs built a small cabin on their land but did little else to improve their property for some four years. Then starting in the middle of 1941, plaintiffs constructed a nine-room home on their property, drilled a well, and made other substantial improvements in the clearing of their land, spending in excess of $15,000, all with the intent that the property should constitute their place of residence. During the process of this construction plaintiff Mary Louise Cooke called upon Dr. F. O. Butler, medical superintendent of the Sonoma State Home, and Mr. H. H. Waterhouse, business manager of the home, to inquire whether the state would bear part of the cost of improving the roadway on the state's property. These officials replied that although they believed that the state was not justified in assuming any portion of the expense, plaintiffs could make whatever improvements they desired without interference from the state. In line with this understanding, plaintiffs had portions of the road straightened, caused scraping and surfacing work to be done and culverts to be built, all of which improvements, along with the construction of the house, were seen from time to time by the mentioned state officials.

As above noted, the state in the early part of 1944 conveyed the property upon which the roadway in question is situated to Foster. Shortly thereafter Foster and Mrs. Cooke discussed the Cookes' use of the roadway in accordance with the Cookes' previous exercise of their rights thereon, and they reached an agreement whereby Foster would bear one third and the Cookes two thirds of the cost of maintenance and repair of the roadway. Both parties were to have the

right to use the road. Pursuant to this arrangement, plaintiffs hired a bulldozer to scrape the road, the Cookes contributing $27.50 and Foster about $15 as their respective shares of the cost.

In the fall of 1944, Foster conveyed his property to the Ramponis, defendants herein. Soon thereafter Mrs. Cooke had a conversation with Mr. Ramponi in an attempt to continue the arrangement plaintiffs had with Foster respecting the maintenance and repair of the roadway, but Ramponi stated that he was a "poor woodcutter" and refused to bear any of the expense. The conversation concluded with the agreement that plaintiffs could do what they wished about the maintenance of the road so long as they did not bother defendants in that regard. Upon that basis, plaintiffs during the winter season of 1944-1945 had the ditches cleaned and deepened, the road scraped and graded again and surfaced with oil, and culverts installed, all at substantial expense. Following these expenditures, Ramponi barricaded the road and indicated to plaintiffs that it was defendants' private roadway, that plaintiffs did not have the right to travel thereon, and their free use of it would no longer be permitted. Prior to this the parties had used the road jointly. Defendants' property was in the main unimproved and uncultivated land, with considerable tree and shrub growth thereon. Ramponi was accustomed to traveling the road in question with his truck in the process of carrying on his woodcutting operations, and from this principal road he had made some dirt roads leading into various interior portions of his property to haul out rock and firewood.

In September, 1945, plaintiffs commenced this action, seeking to establish their right to the use of the road as a means of access to their property and to enjoin defendants from interfering with their use thereof. Defendants filed their answer and cross-complaint, setting forth a damage claim of $5,000 by reason of alleged acts committed by plaintiffs on defendants' property in connection with the maintenance of the road and seeking a declaration of defendants' exclusive rights in such road. Upon the preliminary hearing of the matter, plaintiffs were granted a temporary injunction. Thereafter, in the successive years of 1946 and 1947, plaintiffs expended some $1,000 in macadamizing the road, as well as doing oiling and other maintenance work in pursuance of their agreement to keep the road in condition for vehicular travel. Following the trial of the action, plaintiffs were per-

mitted to file an amended complaint so as to include a more specific description of the road in question and to set forth under their general allegation of ownership of the easement the contentions of an executed oral license and estoppel, which were matters in dispute upon the preliminary proceedings in determination of the temporary injunction, as well as throughout the subsequent trial. (See *Cairns* v. *Haddock,* 60 Cal.App. 83, 91 [212 P. 222].) The trial court made findings favorable to plaintiffs upon all controverted issues in sustaining their claim of an easement "for road and right of way purposes" over defendants' property. The judgment which was thereafter entered decreed that plaintiffs had an irrevocable license to use the road for the purposes of ingress and egress to and from their property for so long as the nature of their use required the continuance of the license, and defendants were estopped to deny plaintiffs' rights. The court further enjoined defendants, their agents and those acting for them from obstructing plaintiffs' use of the road.

There appears to be ample evidence in support of the findings and judgment. ■ As stated in *Stoner* v. *Zucker,* 148 Cal. 516, at page 520 [83 P. 808, 113 Am.St.Rep. 301, 7 Ann. Cas. 704], it is well settled in this state that "where a licensee has entered under a parol license and has expended money, or its equivalent in labor, in the execution of the license, the license becomes irrevocable, the licensee will have a right of entry upon the lands of the licensor for the purpose of maintaining his structures, or, in general, his rights under his license, and the license will continue for so long a time as the nature of it calls for." ■ The principal basis for this view is the doctrine of equitable estoppel; the license, similar in its essentials to an easement, is declared to be irrevocable to prevent the licensor from perpetrating a fraud upon the licensee. (*Gravelly Ford Canal Co.* v. *Pope & Talbot Land Co.,* 36 Cal.App. 717, 722-723 [178 P. 155]; *Stepp* v. *Williams,* 52 Cal.App. 237, 256-257 [198 P. 661]; 4 Cal. L.Rev. 344 ;10 Cal.L.Rev. 96; 13 Cal.L.Rev. 166; Rest., Property § 519(4); see, also, § 521(4).) ■■ While the doctrine of estoppel may, in exceptional cases, be applied in favor of a private person against the state or its agencies (*City of Los Angeles* v. *Cohn,* 101 Cal. 373, 377-378 [35 P. 1002]; *Times-Mirror Co.* v. *Superior Court,* 3 Cal.2d 309, 328-332 [44 P.2d 547]; *City of Los Angeles* v. *County of Los Angeles,* 9 Cal.2d 624, 630-631 [72 P.2d 138, 113 A.L.R. 370]; *Farrell* v. *County of Placer,* 23 Cal.2d 624, 627-628 [145 P.2d 570,

153 A.L.R. 323]), and the parties argue the propriety of invoking, that doctrine against the state and its successors in interest by reason of plaintiffs' expenditures during the period of the state's ownership of the servient tenement and in reliance upon the representations and acquiescence of its responsible agents (10 Cal.Jur. § 28, p. 650; *City of Los Angeles* v. *Cohn, supra*, pp. 377-378), the assailed judgment need not rest on that theory of estoppel. Rather the record establishes an executed, irrevocable parol license in favor of plaintiffs as the result of their respective agreements with the state's successors in interest—Foster and then defendants—and the mutual performance of the parties thereunder.

Proceeding to an examination of the facts and the circumstances surrounding the period of Foster's ownership of the servient tenement in 1944, the record shows that a bulldozer was used to scrape and level the road and laborers were employed to remove the annual accumulation of trash and debris from the bordering ditches; that for such work Foster and plaintiffs expended respectively $15 and $27.50. In line with their joint undertaking, Foster and plaintiffs agreed that the road was subject to their mutual use and enjoyment. Then upon Foster's conveyance of the servient tenement to defendants, the same kind of agreement was made between plaintiffs and defendants as to the parties' mutual use of the road but defendants were not to bear any of the cost of maintenance. Consistent with this latter understanding and in the spring of 1945, plaintiffs at their own expense had the ditches cleaned and deepened, the road scraped and graded again and surfaced with oil, installed culverts, and carried on the usual yearly maintenance program necessitated by the winter rains. Defendants accepted the benefits of this work, using the road in question as the main artery from which they constructed various side roads furnishing the only means of access into interior sections of their property.

Defendants cite the case of *McCarthy* v. *Mutual Relief Assn.*, 81 Cal. 584, 588 [22 P. 933], for the proposition that ''when a party relies upon expenditure upon the faith of a license as an estoppel,'' it ''should not be trivial in amount.'' There the expenditure was only two or three dollars, and no additional costs were involved in the way of a continuing liability. But here the license rests on an entirely different basis, presenting not only plaintiffs' outlay of $27.50 as their

share for one year's repair work on the road pursuant to their agreement with Foster, but further substantial expense for necessary maintenance in the succeeding year in accord with their understanding with defendants to assume the entire cost of the upkeep of the road. Plaintiffs performed their part of the agreements made with the respective owners of the servient tenement before defendants made any attempt to repudiate the license, and the additional expenditures incurred by plaintiffs in succeeding years after the commencement of this litigation evidence further performance on their part of their agreed undertaking with defendants and in protection of their "rights under [their] license." (*Stoner* v. *Zucker, supra,* 148 Cal. 516, 520.)

A comparable situation was presented in *Ricioli* v. *Lynch,* 65 Cal.App. 53 [223 P. 88], which also concerned a license to use a roadway. There the owner of the property on which the road in question was situated asked some of his neighboring landowners to "come over and help gravel the road, and all travel it," and the court held that when "those persons accepted the proposition" and spent considerable time in working on the road, the "license became irrevocable." (P. 58.) Another instance of mutual benefit derived from execution of the license is the case of *Clendenin* v. *White,* 62 Cal.App. 664 [217 P. 761]. There the license involved the construction and use of an irrigation ditch on adjoining land. The agreement called for joint use of the ditch by the respective parties, and the licensee performed his obligation of maintaining the ditch in proper condition over the years without objection. In declaring an irrevocable license to have been created under such circumstances, the court particularly noted that the operation and maintenance of the license was for the benefit of the licensor as well as the licensee.

The record here shows that plaintiffs have only this one road available for access to their property; that its location and use by plaintiffs were facts open to defendants at the time of their acquisition of the servient tenement, and with such knowledge defendants made their agreement with plaintiffs for the maintenance and upkeep of the road to their mutual interest in servicing their respective pieces of property. Plaintiffs have performed their part of the agreement, and to allow defendants now to repudiate the parties' agreement would work an injustice that equity should not tolerate. (*Miller & Lux* v. *Kern County Land Co.,* 154 Cal. 785, 788-

789 [99 P. 179]; *Gravelly Ford Canal Co.* v. *Pope & Talbot Land Co., supra,* 36 Cal.App. 717, 737; *Stepp* v. *Williams, supra,* 52 Cal.App. 237, 255; *City of Vallejo* v. *Burrill,* 64 Cal. App. 399, 404-405 [221 P. 676].) Like considerations have prevailed in cases where it has been held that "an oral agreement, if executed and based upon a valuable consideration, will convey an equitable title to the easement agreed upon" (*Douglas* v. *Lewin,* 131 Cal.App. 159, 162 [30 P.2d 959]), and rights so created will be protected by injunction. (*Flickinger* v. *Shaw,* 87 Cal. 126, 133 [25 P. 268, 22 Am.St.Rep. 234, 11 L.R.A. 134]; *Irrigated Valleys Land Co.* v. *Altman,* 57 Cal.App. 413, 426-427 [207 P. 401].)

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.