[Sac. No. 55.    Department Two.—March 20, 1896.]

# HARRIET TREVASKIS, APPELLANT, v. THOMAS PEARD ET AL., RESPONDENTS.

111  599|
e146  712|

APPEAL—REVIEW—OBJECTION OF RESPONDENT.—Where the respondent has taken no appeal, his attack upon the findings and conclusions of law cannot be considered; and the only objections which can be reviewed are those urged by the appellant.

MINING CLAIMS — FORFEITURE —ANNUAL EXPENDITURE — EJECTMENT.— Where the owner of a mining claim is wrongfully ousted, and work is done upon the claim by the parties in possession, until an action of ejectment is brought and successfully maintained by the owner, the defendants in such action cannot insist that the mining claim was forfeited by reason of the failure of the owner, during the time of their hostile possession, to perform the annual expenditure upon the claim required by the Revised Statutes of the United States.

ID.—ABANDONMENT—EVIDENCE—PLEADING—QUIETING TITLE.—Abandonment of a mining claim need not be specially pleaded, but may be given in evidence under a denial of title, and may be proved by the plaintiff, in an action to quiet title to a mining claim, to rebut a title set up by the defendant under an earlier location.

ID.—PROOF OF ABANDONMENT—FINDING AGAINST EVIDENCE.—Abandonment of a mining claim is proved by evidence that the claimant removed from the claim to mine in another part of the country, where he remained for two years, and that he declared that he had abandoned the claim, and would never return there again to work, and by the testimony of the claimant himself that he had abandoned it, unless it should be developed into a paying property; and a finding, in view of such evidence, that he had not abandoned the claim, is against evidence.

ID.—CONDITIONAL ABANDONMENT NOT RECOGNIZED.— The law does not recognize a conditional abandonment, but an abandonment must be regarded as absolute, if existing at all.

ID.—TIME OF ABSOLUTE ABANDONMENT.—If the intention to abandon has been formed and once acted upon, the abandonment is as absolute, if it exists for a moment, as though it continued for years.

APPEAL from a judgment of the Superior Court of Nevada County and from an order denying a new trial. JOHN CALDWELL, Judge.

*Alfred D. Mason*, and *F. J. Dennis*, for Appellant.

The decision is against law, as there is no finding on the issues of forfeiture and abandonment. (*Bell* v. *Bed Rock etc. Co.*, 36 Cal. 214; *Cummings* v. *Conlan*, 66 Cal. 414; *Knight* v. *Roche*, 56 Cal. 15; *Spotts* v. *Hanley*, 85 Cal. 168; *Brison* v. *Brison*, 90 Cal. 328; *Simmons* v. *Hamil-*

*ton*, 56 Cal. 495; *In re Doyle*, 73 Cal. 570, 571; *Langan* v. *Langan*, 89 Cal. 195.)  Evidence of abandonment is admissible under the general issue.  (*Bell* v. *Bed Rock etc. Co., supra; Sparrow* v. *Rhoades*, 76 Cal. 210, 211; 9 Am. St. Rep. 197.)  The evidence shows a clear case of abandonment.  (*Seymour* v. *Wood*, 53 Cal. 303; *Waring* v. *Crow*, 11 Cal. 336; *Myers* v. *Spooner*, 55 Cal. 260.)

*C. W. Kitts*, for Respondents.

Plaintiff, being a married woman, cannot maintain this action.  (Civ. Code, secs. 163, 164, 172; Code Civ. Proc., sec. 370.)  There was no forfeiture.  (U. S. Rev. Stats., sec. 2324.)  The suit by Peard in 1893 disproves abandonment, nor can abandonment be urged here for the first time, not having been set up in the specifications of error.

HENSHAW, J.—Appeals from the judgment and from the order denying a new trial.

The action was brought under section 738 of the Code of Civil Procedure to settle conflicting claims to the land in controversy, being certain placer mining claims.  Thomas Peard is the only defendant interested in this hearing.  But as he appears merely as respondent, and has himself prosecuted no appeal, his attack upon certain findings and conclusions of law which he claims are unsupported or unsound cannot be considered.  The objections which may be reviewed are those alone which appellant urges.

In 1887 the lands in question were public mineral lands of the United States.  Upon that date they were located by Peard and others, to whose rights Peard afterward succeeded.  In this location was included about seventeen acres to the north of and adjacent to the land in controversy.  The land in controversy lies in section 2, the seventeen acres in section 35.  One hundred dollars worth of labor was yearly expended upon the premises by Peard until the year 1891.  In 1889, however, an action was prosecuted against him to fore-

close a miner's lien upon his claim. The complaint sought to subject to the lien, not the land here in controversy, but the seventeen acres above referred to. Peard made default in this action, and the judgment declared a lien upon the land in controversy as well as upon the seventeen acres, and decreed a sale in satisfaction of the same. All the land was accordingly sold in compliance with the decree and the order of sale which conformed thereto; but after the sale the court amended its judgment and the order of sale by striking therefrom the portion of the land here in controversy, and limiting the lien to the seventeen acres described in the complaint. The sheriff's deed executed after these amendments purported to convey all of the land, that here in controversy as well as the seventeen acres, to the purchaser, Simmons. Thereafter Simmons conveyed all of his interest to Henry Trevaskis (husband of this plaintiff) and to Ida Marion. Trevaskis and Marion continued to hold and work the claim. In December, 1893, this defendant Peard commenced an action in ejectment against Henry Trevaskis and Ida Marion to recover the premises here in dispute. Harriet Trevaskis was not made a party to that action. Judgment therein passed for Peard. Thereupon Trevaskis and Marion abandoned their claim upon it, and Harriet Trevaskis and her married daughter, Ella Raymond, entered upon it and located it as vacant mineral land. Ella Raymond thereafter sold to her mother her interest in the location for an expressed consideration of one dollar, and in due time this action was commenced.

In her complaint plaintiff alleged the location by Peard in 1887, but averred that Peard had not performed the annual amount of work required by law for the years 1891 to 1894 inclusive, that therefore the claim became "jumpable," and " Peard's interest was forfeited," and that she had, under these circumstances, made a valid location.

Peard answered denying that plaintiff had any interest in the land, pleaded his action against Henry Tre-

vaskis as a bar, and set up a valid claim under the first location. He averred that the attempted location of Harriet Trevaskis and Ella Raymond was fraudulent and void, and that the land at the time thereof was not subject to location.

The court by its findings and conclusions determined that the rights which plaintiff and her colocator acquired were separate property; that Ella Raymond had "loaned the use of her name to enable plaintiff to secure title to more land than plaintiff herself could legally locate," and had conveyed her interest to plaintiff; that plaintiff complied with the law in making her location, but that the premises were not subject to relocation. It decreed that plaintiff had no interest or estate in the premises and that defendant Peard was the owner and entitled to the possession thereof.

There is, in the foregoing, a determination that a married woman who is a citizen may make a valid location of mineral lands, and that such a claim is her separate property. Though much argument has been advanced for and against the soundness of this proposition, the question is not presented by this appeal. Appellant is not complaining and respondent is not in a position to object. The findings and conclusions are unassailed in this particular, and this consideration must be confined, as has been said, to a discussion of the objections of appellant.

The first of these objections is that the court did not find upon the claim of forfeiture, and that Peard had in fact forfeited his claim by failure to do the legal amount of work thereon since the year 1890.

The facts in this regard have already been stated. The forfeiture pleaded was claimed to have resulted because of this failure. But in the year 1890 defendant was ousted and Henry Trevaskis and Ida Marion let into possession under the sheriff's deed. They maintained this possession as of their own right and against Peard continuously until he had prevailed against them in his ejectment suit to recover the land. So long as

Peard's suit was commenced within the time limited by
the statute, he cannot be held to have forfeited his
claim by a failure to perform the work under such cir-
cumstances.   Otherwise one might by force maintain
possession for a year and then assert a forfeiture against
the dispossessed unfortunate owner.

The court found the facts of Peard's ouster by the
claimants under the sheriff's deed, that they had con-
tinuously held possession of the property ever since and
done the legal amount of work annually thereon, and
that Peard had commenced within the statutory time an
action in ejectment which was then pending.   While
the ultimate fact that no forfeiture resulted is not
found, yet that is the only determination which could
follow the facts actually set forth, and indeed it is em-
braced in the conclusion that the ground was not sub-
ject to relocation at the time of plaintiff's entry for that
purpose.   For, had Peard forfeited, the land would have
been relocatable.

The second objection is that no finding is made upon
the question of abandonment.   Abandonment was not
pleaded, but evidence of abandonment may be given
without a special plea under a denial of title.   (*Bell* v.
*Bed Rock etc. Co.*, 36 Cal. 214; *Willson* v. *Cleaveland*, 30
Cal. 192.)   In the foregoing cases the proof was sought
to be made by defendant denying plaintiff's title in
ejectment.   But we conceive the rule to be applicable to
a case such as this.   Plaintiff by her pleading called
upon defendant to declare the nature of his claim.   This
he did by asserting rights under a location earlier than
her own, which location, if still valid, necessarily avoided
her own, and she undertook to defeat the claim of a
valid prior subsisting location by evidence of its aban-
donment.   She was within her right in so doing.

The court, it is true, did not find upon the question
of abandonment, but its declaration that the land was
unlocatable at the time of plaintiff's entry carries with
it the necessary deduction that there had been no aban-

donment. It may, for the purpose of this consideration, be treated as a finding to that effect.

Even so, the evidence fails to support it. There is no conflict, and it is briefly as follows: The witness Dean for the plaintiff testified that, after the foreclosure suit of *Stevens* v. *Peard*, Peard went away, and was gone for two years. When he came back witness asked him if he was going to the claim (the claim in controversy) to work. "He said, no, that it had cost him enough in lawyers' fees and dead work; that he had abandoned it and would never return there again unless he crossed it in going to some other place." Peard, when called to the stand, made no denial of this, but testified: "That in 1890 he moved the furniture, cooking stove, and other things he had in a cabin he occupied on the claim away before he went to God's Country. That he mined in God's Country for over two years, and was never again on the claim until three weeks before he commenced suit against Trevaskis, Stevens, and Mrs. Marion (December 2, 1893), when he went into their tunnel. That he knew of the sheriff's deed and location under which Trevaskis and Stevens held possession, and since his return from God's Country knew of the work they did on the claim; that he never ordered them to quit or notified them that he owned the claim. That the reason he gave them no such information was because he intended to let them go ahead, if they saw fit, and develop the claim, and if they struck pay he would claim it. . . . . That his counsel had informed him that the decree, certificate of sale, and sheriff's deed were invalid and passed no title to the portion in section 2, as the complaint in that action only described the mining claim as being in section 35. . . . . That being so advised by his counsel, and knowing that his title to the property of the Mt. Charles in section 2 was good, although so sold to Simmons by the sheriff, he had held back while Trevaskis, Stevens, and Mrs. Marion were trespassing thereon. That it was their business to look out

for their own title, and he was glad they were doing the work, as it would save him doing it; that he therefore laid back, never informed them he claimed any interest therein, or forbid them working; never claimed any of the gold they took out, or interfered with them in any manner, until he brought suit December 2, 1893." This is all of the evidence upon the question.

It is not a matter of regret that the scheme outlined by defendant's testimony is no better in law than it is in good conscience. Abandonment, it is true, is a matter of intent, but that intent may be proved by the acts and conduct of a party even against his express declarations to the contrary '(*Myers* v. *Spooner*, 55 Cal. 260); and if the intent has been formed and once acted upon, the abandonment is as absolute "if it exists for a minute or a second, as though it continued for years." (*Waring* v. *Crow*, 11 Cal. 366.)

In *Seymour* v. *Wood*, 53 Cal. 303, plaintiff in ejectment moved his possessions from the mining claim, and went to Mexico, where he followed mining for several years. He denied that he had abandoned his claim, but admitted that he knew defendants were working it and had applied for a patent. The question of abandonment was submitted to a jury, which returned a verdict for plaintiff. This court said that the verdict should have been set aside and a new trial ordered, as the abandonment was clearly established.

But the evidence in that case was not so convincing as that presented by this record. Defendant's admission of abandonment is not denied. He not only removed his effects from the claim, and prosecuted mining for years in another part of the country, but himself admits a conditional abandonment at least. He had abandoned it, unless others by their work and labor developed it into a paying property. No such conditional abandonment can be recognized. It must be all in all or not at all, and there can be no hesitation in this case in declaring it to be absolute.

The judgment and order are reversed, and the cause remanded for a new trial.

McFARLAND, J., and GAROUTTE, J., concurred.