## LEE v. ELLIS.

### Opinion delivered October 19, 1925.

LANDLORD AND TENANT—LIABILITY FOR RENT.—Where plaintiff offered either to rent certain land to defendants for 1000 pounds of lint cotton and to make certain improvements on the land, or to rent the land without the improvements for one-third of the crop, and defendants accepted the first offer, they will be liable for 1000 pounds of lint cotton, less whatever damage they sustained by failure of the plaintiff to make the proposed improvements.

Appeal from Woodruff Circuit Court, Central District; *E. D. Robertson*, Judge; reversed.

*W. J. Dungan*, for appellant.

*E. M. CarlLee*, for appellee.

HART, J. J. W. Lee brought this suit against Jim Ellis and Hallet Ellis to enforce a landlord's lien in the sum of $247.83 for rent and supplies.

It is alleged in the complaint that the defendants have disposed of some of the cotton grown by them on the farm of the plaintiff without his consent and without paying all of the rent.

The defendants deny that they owed the plaintiff any amount whatever for rent and supplies, and filed a cross-complaint against the plaintiff in which they asked for a judgment against him, because he had sold and disposed of the proceeds of all the cotton grown on the place without accounting to them for their share.

The jury returned a verdict in favor of the defendants, and from the judgment rendered the plaintiff has duly prosecuted an appeal to this court.

The only ground relied upon for a reversal of the judgment is that the testimony is not legally sufficient to support the verdict.

According to the testimony of J. W. Lee, the plaintiff, and Geo. Lee, his son, the plaintiff rented forty-five acres of land to Jim and Hallet Ellis for the year 1923. He rented it to them both and was to receive two thousand pounds of lint cotton as rent therefor. The defendants only delivered to him about one thousand pounds of lint cotton, and that left a thousand pounds of lint cotton due him as rent.

Jim Ellis and Hallet Ellis were witnesses for themselves. According to the testimony of Jim Ellis, J. W. Lee first rented some land to Hallet Ellis and told Hallet that if he would give him one thousand pounds of lint cotton as rent, he would put up a barn and add another room to the house; or that Hallet could have the land for one-third of the crop raised by him. Hallett told the plaintiff that he would rather give him a thousand pounds of lint cotton and let the plaintiff build the barn, because he did not want his stock to stand out in the weather. The plaintiff then told Jim Ellis that, if he would give him one thousand pounds of lint cotton for the other half of the place, he might have a house and garden across the brake for his son-in-law, and Jim Ellis said, "All right." The

plaintiff refused to let Jim Ellis have the house across the brake, and Jim Ellis thought that then he would only have to pay one-third of the crop as rent. The plaintiff also failed or refused to build a barn for Hallet Ellis.

On direct examination Hallet Ellis was asked to tell the jury what kind of rent contract he had with the plaintiff and answered: "We went over the place, me and my father with him, and he offered it to us for a third, and my father wasn't going to take any of the place at all, he said he had been promising me the place all fall, and then we come up on the south side of the field, and Mr. Lee says, 'Hallet, I tell you what I will do with you'; he says, "If you will give me one thousand pounds of lint cotton, I will build you a barn for your stock and put you another room to the house, or you can have it for a third,' and I says, 'Mr. Lee, I rather give you a thousand pounds of lint rather than let my stock stay out and take the weather and do without the use of the room in the summer,' and he says, 'All right'; and then he says, 'Mr. Ellis, I will let you have the house across the brake and the garden spot for your son-in-law to live in for a thousand pounds of lint, or you can have it for a third'; and Pa says 'All right'; and he let another fellow have the house to make a share-crop there for him, and he never did put up my barn or the room, and I figured one-third was all he could hold me for."

The result we have reached renders it unnecessary to abstract the testimony on the cross-complaint of the defendants.

The defendants were examined and cross-examined at length; but we think that we have stated the gist of their testimony material to the issue raised by the appeal. It will be noted that all of the parties agree that the land was rented for two thousand pounds of lint cotton by the defendants. The plaintiff and his son testified that but one contract was made, and that was with both the defendants. They deny that the plaintiff promised to build a barn and add a room to the dwelling house on the land

rented by Hallet Ellis, and that he promised to let Jim Ellis have a house and garden across the brake for his son-in-law. The defendants testified that separate contracts were made with them, and that each was to pay the plaintiff one thousand pounds of lint cotton. They say in addition that the plaintiff was to build a barn and add a room to the dwelling house on that part of the land rented by Hallet Ellis, and that Jim Ellis was to have the use of the house and garden across the brake for his son-in-law. They both testified positively that this was the contract with the plaintiff.

It is true that they say that the plaintiff proposed to let them have the land for one thousand pounds of lint cotton and in addition to make the improvements testified to; or to rent them the land for one-third of the crop. They both say, however, that they accepted the first proposition. Their acceptance of the first proposition made that the contract between the parties. The plaintiff and the defendants differ about whether the improvements were to be made, but they all agree that the plaintiff was to receive two thousand pounds of lint cotton as rent. The mere fact that the plaintiff refused to perform the contract about making the improvements would not abrogate the contract which had already been made between the parties by the acceptance by the defendants of the proposition of the plaintiff to let them have the land and make the specified improvements if they would pay him two thousand pounds of lint cotton. After this proposition was accepted by the defendants, its terms constituted a valid and binding contract between the parties, and the second proposition about receiving one-third of the crop as rent passes out of the case and could not become the contract between the parties without their entering into an agreement to rescind or modify their first agreement and substitute it as a new agreement. In other words, the fact that the plaintiff refused to perform the contract in its entirety by the failure to make the specified improvements would not relieve the defendants

of their obligation under it if they stayed on the place and undertook to farm the land. When they did this, they became obligated to the plaintiff to pay the specified rent, and were only entitled to a reduction of the rent in the amount in which they were damaged by the breach of the contract by the plaintiff. They could not stay on the land under the contract and refuse to carry out their agreement about paying the rent because the plaintiff failed or refused to carry out his part of the contract about making the improvements. They could only ask for a reduction of the rent in the amount they were damaged by the plaintiff breaking the contract. *Varner* v. *Rice,* 39 Ark. 344; *Brunson* v. *Teague,* 123 Ark. 594; *Johnson* v. *Inman,* 134 Ark. 345.

It is true that the defendants say that they thought that when the plaintiff failed to make the improvements he intended to take a third of the crop for rent; but, as we have already seen, a new or substituted agreement could not be made without the mutual consent of the parties, and it is not claimed by any one that the plaintiff rescinded his first contract, or agreed to a new one whereby he was to receive one-third of the crop as rent. In short, where one person proposes a contract in alternative terms and one of his propositions is accepted by the other, this constitutes a valid and binding contract; and a breach of it by either party does not abrogate it or constitute an acceptance of an alternative proposal without the mutual consent of the parties.

The undisputed evidence shows that the plaintiff was entitled to judgment for the value of one thousand pounds of lint cotton less the damages suffered by defendants by reason of his breach of the contract in not making the improvements agreed upon by him.

It follows that the judgment must be reversed, and the cause will be remanded for a new trial.