[Civ. No. 21754. Second Dist., Div. Three. Feb. 25, 1957.]

H. S. CROCKER COMPANY, INC. (a Corporation), Appellant, v. MRS. CLAUDE L. McFADDIN, Respondent.

Loeb & Loeb, Allen E. Susman, Myron L. Slobodien and Herman F. Selvin for Appellant.

Pray & Price and Jerry Giesler for Respondent.

VALLÉE, J.—Appeal by plaintiff from two judgments for defendant in an action of claim and delivery.[1] The controversy centers around the title and the consequent right to possession of some two hundred thousand Christmas greeting cards.

Plaintiff maintains a division known as California Artists which publishes and distributes Christmas greeting cards. Each year it publishes a series of new cards in albums. The albums are distributed to its retail outlets. Cards carried over from one season are boxed for the next season and sold at a lower price. After two seasons the remaining cards are reviewed and some are selected for destruction. In early 1952 one of plaintiff's traffic managers was told by his superior that "if he could make sure that the cards taken to the City Dump would be destroyed, that he could take them there."

---

[1] Upon the conclusion of the trial, a judgment awarding defendant the property in question or, if the property was not returned to her, permitting her to establish and have judgment for its value, was entered. Thereafter defendant's motion for "a partial new trial" for the purpose of determining the defendant's damages if the property was not returned, was granted. Plaintiff appealed from the judgment and from the order granting a partial new trial. Thereafter a trial on the issue of damages was had. A second judgment for delivery of the property to defendant and for $8,830 damages if not returned was entered. That judgment was also timely appealed. The findings of fact were substantially identical in each instance, except for the addition to the second set of findings, re damages.

City Dump and Salvage, Inc., a private concern, conducts a dump and salvage operation in Long Beach. People desiring to dispose of material take it to the dump. The person bringing the material stops at a small building near a gate; a person at the gate checks the load as to size, quantity, and materials, estimates the charge, bills the person, and on being paid gives him a receipt and directs him to the dump site where the customer dumps the material. Shortly thereafter salvage men begin salvaging. That which is left after salvaging is covered.

If a person expresses a desire that the material be destroyed and not salvaged, City Dump and Salvage has a form on which it is specified that the material is to be covered; it charges "considerably extra because it is a very expensive way of doing it"; a hole is dug; the material is dumped in the hole and covered. City Dump and Salvage then certifies in writing that the material has been covered. If that arrangement is not made, the dump operators, either themselves or through concessionaires, salvage such of the dumped material as desired.

In January 1955 employees of plaintiff took about 877,000 cards packed in cartons to the dump with instructions to "Take the cards to the dump and dispose of them." They paid City Dump and Salvage $2.50 for each load—which was not the fee for which the company would destroy the cards—received a receipt headed "City Dump & Salvage, Inc.," and dumped the cards into the dump. The truck in which the cards were taken to the dump was a rented truck with "O.K. U-Drive" on the side. Plaintiff's employees did not inform City Dump and Salvage that plaintiff intended or wanted to have the cards handled so as not to be subject to salvage or that they wanted them destroyed. There was no discussion at any time between anyone associated with plaintiff and anyone associated with City Dump and Salvage with respect to destruction of the cards taken to the dump in January 1955. Employees of plaintiff testified that on occasions when they delivered cards to the dump in 1952, 1953, and 1954 they observed tractors and bulldozers covering up cards brought from "California Artists." The evidence is not clear as to whether these observations were made before or after salvaging operations.

City Dump and Salvage sold some of the cards dumped by plaintiff's employees in January 1955 to a third person who, in turn, sold and delivered 220,970 of them to defendant for

$25. The cards purchased by defendant were in cartons. Most of the cartons had a label reading "California Artists" on them. It was stipulated defendant acquired whatever title City Dump and Salvage had obtained.

The cards were in the possession of the sheriff pursuant to a writ at the time of trial. The court found defendant has been and still is the owner and entitled to possession of the cards, and she had not wrongfully obtained possession without plaintiff's knowledge or consent. The first judgment adjudged that defendant recover the cards from plaintiff or, if not recovered, she be permitted to establish the value and recover that amount. The second judgment adjudged that defendant recover the cards from plaintiff or $8,830 if the cards were not returned. Plaintiff appeals from both judgments.

Plaintiff says the finding that defendant is the owner of the cards is contrary to the evidence. It argues the evidence is insufficient as a matter of law to establish a divestiture of plaintiff's title. Plaintiff characterizes the transaction as a bailment for destruction. Defendant asserts the finding is supported by the evidence; there was a sale of the cards to City Dump and Salvage; alternately, plaintiff divested itself of all rights in the property by abandonment; alternately, if not an abandonment to all the world, there was a gift of the cards to City Dump and Salvage. It appears to be agreed that if one delivers property to another as a mere bailee, a purchaser from the bailee, however innocent he may be, acquires no title as against the bailor. (7 Cal.Jur.2d 625, § 6; 8 C.J.S. 313, § 39.)

The cardinal rule in the construction of contracts is that the mutual intention of the parties as exhibited by their language, acts, and conduct, shall govern. It is the objective thing, manifestation of mutual consent, which is essential. (*Brant* v. *California Dairies, Inc.*, 4 Cal.2d 128, 133 [48 P.2d 13]; 1 Williston on Contracts 41, § 22.) The law imputes to a person the intention corresponding to the reasonable meaning of his language, acts, and conduct. (*Platt* v. *Union Packing Co.*, 32 Cal.App.2d 329, 336 [89 P.2d 662].)

In a broad sense a bailment is the delivery of a thing to another for some special object or purpose, on a contract, express or implied, to conform to the objects or purposes of the delivery which may be as various as the transactions of men. (*People* v. *Cohen*, 8 Cal. 42, 43.) Ordinarily the identical thing bailed or the product of, or substitute for, that thing, together with all increments and gains, is to be

returned or accounted for by the bailee when the use to which it is to be devoted is completed or performed or the bailment has otherwise expired. ██ If there is a transfer of ownership the transaction is a sale. (7 Cal.Jur.2d 616, § 2; 8 C.J.S. 225, § 2, 251, § 20, 303, § 37; 6 Am.Jur. 242, § 92, 318, § 208.) ██ The general rule that the assent of both parties is necessary before a contract, either express or implied in fact, can come into existence, is applicable to the ordinary case of a contract of bailment. (7 Cal.Jur.2d 618, § 3; 8 C.J.S. 222, § 1; 6 Am.Jur. 177, § 4.) ██ The duties and obligations of a bailee ordinarily cannot be thrust on one against his consent—they must be voluntarily assumed as in every obligation founded on contract. (*Copelin* v. *Berlin Dye Works etc. Co.*, 168 Cal. 715, 718-721 [144 P. 961, L.R.A. 1915C 712]; 8 C.J.S. 249, § 15b.)

██ No bailment can be implied where it appears it was the intention of the parties, as derived from their relationship to each other and from the circumstances of the case, that the property was to be held by the party in possession in some capacity other than as bailee. (8 C.J.S. 247, § 14.) ██ A transaction is a sale, not a bailment, and title to the property is changed when the receiving party is under no obligation to return the property or to account for it. (6 Am. Jur. 190, § 128.)

A sale is the transfer of the property in a thing for a consideration called the price. (Civ. Code, § 1721.) ██ The essence of the transaction is the transfer of the property. The transfer is that of the absolute interest in the property. (*Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 339 [163 P.2d 869, 165 A.L.R. 621].) ██ The "price" is the consideration passing from the buyer to the seller for the latter's interest in the thing sold. (*Zelkowitz* v. *Tobin*, 108 Cal.App.2d 69, 71 [238 P.2d 19].) Consideration is defined as "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise." (Civ. Code, § 1605.)

██ While the word "sale" is commonly understood to mean a transaction by which the property of one of the parties thereto is exchanged for the money of the other, the legal meaning of the word is not so limited. ██ The con-

sideration need not be money; it may be money or its equivalent; it may be any valuable consideration. (*Mansfield* v. *District Agricultural Assn.*, 154 Cal. 145, 147 [97 P. 150]; *Borland* v. *Nevada Bank*, 99 Cal. 89, 93 [33 P. 737, 37 Am. St.Rep. 32]; *Merchants Holding Corp., Ltd.* v. *Grey*, 6 Cal. App.2d 682, 689 [45 P.2d 253].) *W. F. Boardman Co.* v. *Petch*, 186 Cal. 476 [199 P. 1047], says (p. 482):

"The code defines a sale as 'a contract by which, for a pecuniary consideration, called a price, one transfers to another an interest in property.' (Civ. Code, § 1721.) It is also defined as 'a transmutation of property from one man to another in consideration of some price or recompense in value.' (Anderson's Law Dictionary, 914; Mechem on Sales, § 1.) The agreement whereby one person transfers a right of way for a ditch over his land in consideration that the other party should excavate the ditch and keep it in repair for the common use of both was held to be a sale of the right of way. (*Flickinger* v. *Shaw*, 87 Cal. 130 [22 Am.St.Rep. 234, 11 L.R.A. 134, 25 P. 268].) It is clear, therefore, that the word 'sale,' when used in a contract, does not necessarily mean a transfer for money only. It is not a word of fixed and invariable meaning. (*Eaton* v. *Richeri*, 83 Cal. 186 [23 P. 286].) It may be given a narrow or broad meaning as may be indicated by the context or the surrounding circumstances and the conduct of the parties."

■ A single consideration may support several counter-promises made by the other party to a transaction. (*Vogel* v. *Bankers Bldg. Corp.*, 112 Cal.App.2d 160, 169 [245 P.2d 1069]; *First Nat. Bank* v. *Pomona Tile Mfg. Co.*, 82 Cal.App. 2d 592, 603 [186 P.2d 693].)

■ An offer may contain a choice of terms from which the offeree is given the right to make a selection in his acceptance. (17 C.J.S. 379, § 42; Rest., Contracts, §§ 29, 32.)

■ The acceptance of one alternate proposition constitutes a binding contract. (*Lee* v. *Ellis*, 169 Ark. 556 [275 S.W. 889, 890]. See *Mathieu* v. *Wubbe*, 330 Mich. 408 [47 N.W.2d 670, 673]; 1 Williston on Contracts 128, § 44.) ■ Any conduct of one party from which the other may reasonably draw the inference of a promise is effective in law as such. (1 Williston on Contracts 41, § 22.)

■ Applying these principles to the facts, we have concluded the transaction between City Dump and Salvage and plaintiff was not a bailment: it was a sale. City Dump and Salvage conducted both a dump and a salvage operation.

It offered an opportunity for choice between two things to those who brought material to its dump. For a small charge such persons were accorded the privilege of dumping their material into a pit on the property of City Dump and Salvage, and a salvage operation followed. This was the normal course unless a special contract of a different character was made. If the person bringing the material requested that it be destroyed he was charged a greater sum; he was directed to dump the material in a hole dug by City Dump and Salvage—a different place from that in which he would have dumped it if the request had not been made—and the latter destroyed it without salvaging. Plaintiff concedes there was "a delivery, for a consideration, to a particular person." The early case of *Stephens* v. *Mansfield*, 11 Cal. 363, held that the relinquishment of property for a consideration is a sale or barter.

Plaintiff took the cards to City Dump and Salvage. It paid the fee for the privilege of dumping the cards only. It received a receipt with the name "City Dump & Salvage, Inc." on it, which in effect told it that if the cards were merely dumped into a pit they might be salvaged. It did not manifest in any way any intention or desire that the cards be handled so as not to be subject to salvage or that it wanted them destroyed. Plaintiff had no further use for the cards. In consideration for the privilege of dumping the cards on the property of City Dump and Salvage and thereby relinquishing them, plaintiff paid the latter $2.50 a load and dumped them. Plaintiff thereby sold the cards to City Dump and Salvage, and title to them passed to it. The privilege of dumping the cards into the dump and thereby relinquishing all right in them was the consideration which passed from the buyer, City Dump and Salvage, to the seller, plaintiff. The fact that money was paid as well as the cards delivered to City Dump and Salvage does not negative the fact that the transaction was a sale. (*Cf. Goetten* v. *Owl Drug Co.*, 6 Cal.2d 683, 686 [59 P.2d 142].)

Plaintiff analogizes the transaction to the parking of an automobile in a parking lot and to checking a hat at a hat-check stand. There is no analogy. The distinction is obvious. One who parks an automobile in a parking lot or checks a hat at a hat-check stand does so with the understanding on the part of the operator and on the part of the person parking or checking that the automobile or hat will be returned. In the transaction in suit the understanding mani-

fested by both parties, as impliedly found by the trial court, was that the cards would not be returned.

■ Where the right of recovery rests on the existence of the bailment relationship and the fact of bailment is in issue as it was in the case at bar, the burden of establishing a bailment rests on the plaintiff and includes the burden of proving the making of a valid contract of bailment between the parties, the delivery to the bailee under the contract, and acceptance by the bailee. (6 Am.Jur. 455, § 366.) Plaintiff's cause of action is on the theory of a special contract with City Dump and Salvage—that the latter would destroy the cards. The burden of proving City Dump and Salvage entered into a contract to destroy the cards was on plaintiff. (*Morgan* v. *Citizens' Bank,* 190 N.C. 209 [129 S.E. 585, 587, 42 A.L.R. 1299].)

■ The state of the evidence was not such as to compel a finding that City Dump and Salvage received the cards for the purpose of destruction, or that a bailment was created. The trial judge was justified in determining plaintiff's intention by its outward manifestations and not by its secret intention. So far as it manifested its intention, it was that it desired to transfer the title to the cards to City Dump and Salvage. ■ Intent may be inferred from a party's acts and conduct even in the face of his express declarations to the contrary. (*Trevaskis* v. *Peard,* 111 Cal. 599, 605 [44 P. 246].) The fact plaintiff intended that the cards be destroyed was not communicated to City Dump and Salvage. The fact it so intended and that it thought they would be did not give rise to a contract implied in fact. ■ A secret intent is not an acceptance. (17 C.J.S. 361, § 32; 12 Am.Jur. 515, § 19; 1 Williston on Contracts 49, § 24.) *Travelers Fire Ins. Co.* v. *Brock & Co.,* 47 Cal.App.2d 387 [118 P.2d 25], was an action by the assignee of a bailor against the bailee. The plaintiff's assignor, Mrs. Brandt, took a brooch to Brock and Company to have a lost diamond replaced. Brock sent it to a diamond dealer who furnished a diamond and, in turn, delivered it to a diamond cutter for cutting. While in the diamond cutter's possession it was stolen. The court said (p. 391):

"Plaintiff contends that there was at least a contract implied in fact to that effect, relying on testimony tending to show that the brooch was worth $2,500, and defendant was so informed at the time the contract was made; that Mrs. Brandt had inquired from friends as to the best and most

reliable jeweler to do the work and had been advised to go to defendant; that defendant had a large jewelry business and a repair department and usually did not send repair work out to others; that Mrs. Brandt assumed the work would be done on defendant's premises and would not have left it there for repair had she known it would be sent out; and that defendant's manager, who took it in, did not see anything unusual about it and expected the work would be done in defendant's shop. None of these matters, except the value of the brooch, appear to have been mentioned between the parties to the contract.

" 'An implied contract is one, the existence and terms of which are manifested by conduct.' (Civ. Code, § 1621.) 'A contract implied in fact is one not expressed by the parties, but implied from facts and circumstances showing a mutual intention to contract.' (17 Corpus Juris Secundum, p. 318.) Without such mutual intention there can be no contract in fact; hence the assumption, intention or expectation of either party alone, not made known to the other, can give rise to no inference of an implied contract in accordance therewith. Excluding such matters from consideration, we have no evidence requiring a finding here of an implied contract such as plaintiff relies upon. At most, it might be said that from the evidence conflicting inferences in that respect are possible, in which case the trial court's finding that there was no such contract is binding on us.''

 The evidence was such as to justify the trial court in concluding there was a divestiture of plaintiff's title.

The appeal from the nonappealable order granting a partial new trial is dismissed. The judgments appealed from are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied March 27, 1957. Shinn, P. J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied April 25, 1957.