959 F.2d 240
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania
Corporation, Plaintiff-Appellant,
v.
Harold JOHNSON; Carole Johnson, Defendants-Appellees.
INSURANCE COMPANY OF NORTH AMERICA, a Pennsylvania
Corporation, Plaintiff-Appellant,
v.
Harold JOHNSON; Carole Johnson, Defendants-Appellees.
 Nos. 91-15121, 91-15334.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 13, 1992.
Decided April 8, 1992.
 
 Before WISDOM,* BEEZER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 This case addresses the construction of four promissory notes and a contemporaneous writing. Insurance Company of North America (INA) appeals the district court's summary judgment that the contemporaneous writing canceled the notes upon foreclosure on a real estate limited partnership's primary asset. We have jurisdiction and we affirm.
 
 
 3
 * Harold Johnson purchased a one unit limited partnership interest in Northbrook Apartments, Ltd. He made his investment pursuant to an offering in a private placement memorandum, which set out the limited partnership agreement. He paid $10,000 cash and executed fourteen promissory notes totaling $104,000, each maturing on a different date. Johnson and INA prepared and issued a surety bond guarantying payment of the notes. Johnson and his wife Carole agreed to indemnify INA for any payments on the bond.
 
 
 4
 Northbrook assigned Johnson's notes, among others, to Figgie Acceptance Corporation (Figgie) as collateral for a loan used to finance the purchase of the limited partnership's primary asset, an apartment complex in Dallas, Texas. Figgie held a third deed of trust on the apartment complex. Northbrook did not indorse the notes to Figgie.
 
 
 5
 Waite Hill Services, Inc. (Waite Hill) administered the surety bond that INA and Johnson issued guarantying the notes. In addition to obtaining an indemnity agreement from the Johnsons, INA reinsured its guaranty obligations with Colony Insurance Co. (Colony). Figgie, Waite Hill and Colony are subsidiaries of a common parent, Figgie International, Inc.
 
 
 6
 On November 4, 1986, the beneficiary under the second deed of trust, Dallas Investments II, Ltd. (Dallas), exercised its right to have the apartment complex sold at foreclosure. Dallas purchased at foreclosure for its loan value plus the amount of a prior encumbrance. Figgie did not bid. When Dallas foreclosed, Johnson had already paid ten of his fourteen notes. Johnson did not pay a $5,000 note that matured on November 3, 1986. Neither did he pay three $9,000 notes, due March 1, 1987, July 1, 1987, and November 1, 1987, that matured subsequently.
 
 
 7
 On January 2, 1987, Figgie made a claim on the INA bond for $32,000 plus interest. INA did not object to the claim because it had reinsured with Colony. Figgie was paid on February 23, 1987. Essentially, Colony seeks recovery of the bond guaranty it reinsured. INA serves as the vehicle for that recovery.
 
 
 8
 INA demanded reimbursement from the Johnsons under the indemnity agreement on June 12, 1987. The Johnsons refused. On December 23, 1987, INA sued on the notes and under the indemnity agreement.
 
 II
 
 9
 We review a grant of summary judgment de novo. Datagate, Inc. v. Hewlett-Packard Co., 941 F.2d 864, 867 (9th Cir.1991), petition for cert. filed, 60 U.S.L.W. 3545 (U.S. Jan. 27, 1992) (No. 91-1203).
 
 
 10
 INA complains that the district court granted summary judgment sua sponte when material issues of fact remained. We have approved a grant of summary judgment predicated upon the results of a pretrial conference. Portsmouth Square, Inc. v. Shareholders Protective Comm., 770 F.2d 866, 869 (9th Cir.1985). We have also approved summary judgment for a nonmovant. Cool Fuel, Inc. v. Connett, 685 F.2d 309, 311-12 (9th Cir.1982). In such situations, we determine whether the losing party had reasonable notice that an unfavorable summary judgment might occur, and whether the losing party had a full and fair opportunity to put forth its facts and legal arguments. United States v. Grayson, 879 F.2d 620, 625 (9th Cir.1989); Portsmouth Square, 770 F.2d at 869; Cool Fuel, 685 F.2d at 312.
 
 
 11
 The district court twice heard cross-motions for summary judgment, once on November 29, 1989, and again on May 2, 1990. The district court's June 27, 1990 order indicated that Figgie's understanding, and notice, of the limited partnership agreement cancellation provision was the only issue forestalling a summary judgment for the Johnsons. ER 85. At an August 18, 1990 pretrial conference, the district court indicated that it would review its June 27, 1990 order. The district court decided that Figgie's notice was not a factual issue, but a legal question. It conclusively resolved that question contrary to INA's position. ER 92. INA had notice that summary judgment might occur.
 
 
 12
 Whether INA had an adequate opportunity to set out its legal arguments presents a closer question. The June 27, 1990 order arguably first indicated to INA the gravity of its position. It may not have had adequate opportunity to argue the legal issue of contract construction. Some of INA's strongest legal arguments were apparently raised for the first time in its motion to alter or amend. INA does not, however, identify any material issue of fact left unresolved by the district court. We will review the district court's summary judgment, but we will consider all of INA's legal arguments to ensure INA its full and fair opportunity to develop legal arguments. The Johnsons suffer no prejudice in responding to legal arguments based upon evidence they themselves offered.
 
 III
 
 13
 INA is the proper party plaintiff for Colonial's subrogation action. See J.G. Boswell Co. v. W.D. Felder & Co., 103 Cal.App.2d 767, 230 P.2d 386, 389 (1951). The grounds upon which INA may sue the Johnsons depend on the status of the notes at the time INA indemnified Figgie. "[A]n indemnitee is not bound to submit to suit before paying the claim, [but] if he pays without such suit, he is under the necessity, as a condition of recovery from his indemnitor, of proving that he was liable for the amount thus paid." Carpenter Paper Co. v. Kellogg, 114 Cal.App.2d 640, 251 P.2d 40, 47 (1952).
 
 
 14
 The $5,000 note due November 3, 1986 had matured when INA indemnified Figgie. The indemnity agreement applies to this note if the note was valid and enforceable. If Johnson was liable on the note when INA indemnified Figgie, INA's payment extinguished that obligation, and it recovers from Johnson based on the right of reimbursement in the indemnity agreement. See Regents of Univ. of Cal. v. Hartford Accident & Indem. Co., 21 Cal.3d 624, 581 P.2d 197, 204-05, 147 Cal.Rptr. 486 (1978).
 
 
 15
 The three $9,000 notes clearly had not matured when INA indemnified Figgie. As Johnson had no legal obligation to pay[1] when INA indemnified Figgie, INA has no right to reimbursement. Carpenter, 251 P.2d at 47. In effect, INA purchased from Figgie whatever rights Figgie had against Johnson on the notes. All of the notes had matured by the time INA filed suit.
 
 
 16
 The paramount issue thus is whether Johnson was liable on any of the notes at all. We proceed to consider Johnson's liability on the notes.
 
 IV
 
 17
 The limited partnership agreement executed contemporaneously with the promissory notes modifies the terms of the notes with respect to Northbrook and Northbrook's transferees. Cal.Com.Code § 3119(1). "[Section 3119] applies to commercial paper the general rule of contract law that writings executed as part of the same transaction are to be read together as a single agreement." 5 Ronald A. Anderson, Anderson on the Uniform Commercial Code § 3-119:3, at 366 (3d ed. 1984). The separate writing may be any type of contract, including one that discharges or invalidates a note. Cal.Com.Code § 3119 UCC cmt. 1. California does not require that the writings be contemporaneous, cross-referenced or even contracts in order to be part of the same transaction. A court determines merely whether the writings were " 'made as parts of substantially one transaction.' " Cadigan v. American Trust Co., 131 Cal.App.2d 780, 281 P.2d 332, 336 (1955) (quoting Cal.Civ.Code § 1642).
 
 
 18
 The limited partnership agreement quite clearly was part of the same transaction that gave rise to the notes. The limited partnership agreement specifically refers to the notes, and would lack adequate consideration without them. As between Johnson and Northbrook (and its transferees), both the limited partnership agreement and the notes are components of the parties' contract. Cal.Com.Code § 3119(1); Security Pac. Nat'l Bank v. Chess, 58 Cal.App.3d 555, 129 Cal.Rptr. 852, 856 (1976) (distinguishing a transferee by assignment from a holder).[2]
 
 
 19
 The portions of the private placement memorandum other than the limited partnership agreement present a closer question. In Cadigan, the court held that a letter sent by the obligee four months after the execution of a promissory note and deed was a part of the original contract. 281 P.2d at 333, 336. The letter added a term releasing the makers from liability on the note upon the obligee's death. Id.
 
 
 20
 The warnings in the private placement memorandum do not add terms to Johnson's contract. They merely warn of the consequences of investment. We find that the notes and the limited partnership agreement contain the terms of the parties' contract. The private placement memorandum's warnings are evidence of the parties' intent in entering the contract and evidence of the general purpose of the contract.
 
 V
 
 21
 Contract construction is a judicial function "even though it involves what might properly be called questions of fact." Parsons v. Bristol Dev. Co., 62 Cal.2d 861, 402 P.2d 839, 842, 44 Cal.Rptr. 767 (1965). The factfinder may determine disputes concerning extrinsic evidence, but the court draws any inferences necessary for contract construction. Medical Operations Mgm't v. National Health Labs., 176 Cal.App.3d 886, 222 Cal.Rptr. 455, 458-59 (1986). INA and the Johnsons have no disputes over extrinsic evidence.
 
 
 22
 California courts construe a contract as a whole to effect the general intent of the parties and the purpose of the contract. Cal.Civ.Code §§ 1641, 1650, 1652, 1653. The circumstances surrounding contract formation and the matter to which the contract relates aid in explaining the contract's terms. Id. § 1647. Words in a contract receive their ordinary and popular meaning unless technical usage gives them a special meaning. Id. § 1644; Berman v. Dean Witter & Co., 44 Cal.App.3d 999, 119 Cal.Rptr. 130, 133 (1975). The preceding rules provide the framework for construing the terms of a contract. If doubt remains as to the meaning of a contract term, it is construed against the party causing the ambiguity. See Houge v. Ford, 44 Cal.2d 706, 285 P.2d 257, 260 (1955) (finding Cal.Civ.Code § 1654 inapplicable when Cal.Civ.Code § 1647 explained the contract term).
 
 
 23
 * The parties first dispute whether a foreclosure is a sale that invokes provision 8.4.d of the limited partnership agreement. "While the word 'sale' is commonly understood to mean a transaction by which the property of one of the parties thereto is exchanged for the money of the other, the legal meaning of the word is not so limited." H.S. Crocker Co. v. McFaddin, 148 Cal.App.2d 639, 307 P.2d 429, 433 (1957). We must determine whether the contracting parties intended to depart from the commonly understood meaning of the word "sale."[3]
 
 
 24
 The parties' overall purpose was to invest in real estate as a tax shelter. Provision 8.4.d governs what happens upon sale of the partnership's primary asset at a loss.[4] The provision is pointless if it does not apply to this disposition of the limited partnership's primary asset. We find that, upon considering the purpose of the contract, the term "sale" clearly includes a foreclosure. See Houge, 285 P.2d at 260.
 
 B
 
 25
 Provision 8.4.d confers substantive rights on the investors. It states that "[u]pon sale of the Property, if the Promissory Notes of the Limited Partners have not been paid, they shall be cancelled." We read this provision as a fairly straightforward use of nonrecourse debt. See id. As of November 4, 1986, Johnson had not paid four notes. Upon sale, they were canceled.
 
 C
 
 26
 INA argues that extrinsic evidence and various rules of law require a contrary construction. We do not find that any of INA's arguments rebut construing provision 8.4.d as a fairly straightforward use of nonrecourse debt in a tax shelter.
 
 
 27
 * INA points to language in the private placement memorandum that accompanied the limited partnership agreement as showing that the parties intended both foreclosure on the property and enforcement of limited partner notes. "[T]he lenders will not be limited to seeking repayment of their loans by foreclosing on the Property, but rather may institute legal action directly against the individual Limited Partners to compel payment of their notes." INA Opening Brief at 29 (emphasis added). This warning does not indicate that provision 8.4.d will never operate to cancel notes in the event of foreclosure. It indicates that creditors of the limited partnership have an election of remedies. The creditors elected to foreclose. Figgie must have preferred foreclosure to carrying the losses on the first and second deeds of trust while waiting for all investor notes to mature. This warning does not contradict our construction of provision 8.4.d.
 
 2
 
 28
 INA refers to several statutes governing limited partnerships and asserts that provision 8.4.d violates them. See Cal.Corp.Code §§ 15515-15517. The notes' cancellation is not an impermissible return of limited partnership assets because the notes do not belong to Northbrook. The creditors have access to the funds Northbrook received when it assigned the notes. INA does not allege that Northbrook distributed any partnership funds to Johnson. The general partner bears responsibility for accounting for whatever funds Northbrook received from the assignment of the investor notes. Provision 8.4.d does not violate Cal.Corp.Code §§ 15515-15517.
 
 3
 
 29
 INA cites two statutes for the proposition that Northbrook must possess the promissory notes to cancel them. Although such a rule might obtain with respect to a holder without notice, Cal.Com.Code § 3605(1)(a), Figgie and INA were mere transferees. The terms of Johnson's contract with Northbrook merely functioned to cancel his obligations. INA has rights no greater than those of Northbrook, its transferor. Id. § 3119.
 
 
 30
 The second statute INA cites states: "[C]ancellation of a written contract, ... with intent to extinguish the obligation thereof, extinguishes it as to all the parties consenting to the act." Cal.Civ.Code § 1699. This statute facially approves the written contract term canceling the promissory notes. Northbrook and Johnson clearly intended a cancellation and consented to it. INA's objections to terms of the contract Northbrook transferred are irrelevant. Cal.Com.Code § 3119.
 
 VI
 
 31
 INA seeks to avoid Johnson's contract defense by asserting that Johnson waived all defenses to the notes.[5] Neither Figgie nor INA is the payee or a subsequent holder, Cal.Com.Code §§ 1201(20), 3202, so the waiver does not apply directly to either. INA's argument must be that as an assignee it (or Figgie as to the $5,000 note) obtains all of the rights of its assignor. Id. § 3201(1). The question is whether Johnson's limited waiver of defenses is a right that Northbrook could transfer by assignment. We hold that it is not.
 
 
 32
 First, the clear terms of the negotiable instrument waive defenses only as to the payee and subsequent holders. The other class of potential owners of the instrument, transferees, is not mentioned.
 
 
 33
 Second, a transferee for value has the specifically enforceable right to the transferor's indorsement. Id. § 3201(3). Thus, the transferee had at its disposal the means to come within the term on the face of the note. It did not exercise this right, and there is no doctrine of indorsement by operation of law. Because INA did not attempt to invoke Johnson's waiver by becoming a holder, INA fails even to present us with the question whether Johnson's waiver of defenses is invalid because it confers on a holder rights superior to those that a holder in due course could obtain.[6]
 
 
 34
 In the UCC's carefully crafted hierarchy of rights in commercial paper, INA and Figgie occupy the lowest rung, transferee. We refuse to allow a transferee to bootstrap into a waiver plainly intended by the instrument's terms to cover only the payee and subsequent holders, parties whose rights the UCC clearly recognizes as superior.
 
 VII
 
 35
 The notes and the limited partnership agreement form the contract between Northbrook and Johnson. As transferees, Figgie and INA have rights no greater than Northbrook. The contract calls for cancellation of all unpaid notes upon foreclosure. No term on the face of the notes affords Figgie or INA any protection to the contrary. The district court correctly determined that Johnson has no liability to INA.
 
 
 36
 The district court awarded the Johnsons attorney's fees because they prevailed in the district court. Cal.Civ.Code § 1717. We affirm that award because the district court correctly determined that the Johnsons prevailed. The Johnsons have prevailed here as well, and are further entitled to costs and attorney's fees for this appeal. Id.
 
 VIII
 
 37
 The district court's summary judgment and award of attorney's fees are AFFIRMED.
 
 
 38
 The determination of attorney's fees on this appeal is REMANDED.
 
 
 
 *
 The Honorable John M. Wisdom, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 INA nowhere asserts that the notes contained acceleration clauses, and INA's recitation of the notes' terms reveals no acceleration clause
 
 
 [2]
 As well, INA cannot become an accomodation indorser by virtue of its surety bond agreement with Johnson. "Neither the concept of incorporation by reference nor the provisions of UCC § 3-119 permit a second or other writing to be incorporated into a commercial paper so as to constitute an indorsement thereof." 5 Ronald A. Anderson, § 3-119:3, at 367
 
 
 [3]
 The parties recognize this problem in their briefs, but then proceed to waste trees explaining how courts have found various transactions legally to constitute "sales."
 
 
 [4]
 Provision 8.4.d is the contested provision, not provision 8.4.c, which would apply in the event Northbrook had recognized a gain on sale of the apartment complex. Although the district court did not explicitly state that a loss occurred, it referred only to provision 8.4.d as controlling in its order of June 27, 1990. ER 85-3. Figgie did not bid in at the foreclosure sale, strongly implying that the property's value was less than its encumbrances. At oral argument, INA's counsel acknowledged that provision 8.4.d "is the section that we're mostly concerned with here."
 
 
 [5]
 The notes have the following term on their faces:
 The undersigned waives presentment, demand for payment and notice of dishonor of this Note. The undersigned waives any defense or right of offset against payment of this Note to the payee or any subsequent holder of the Note.
 INA Opening Brief at 16.
 The parties' citations to Cal.Com.Code §§ 9206, 9318(1) are inapposite. Those sections deal with buyers and lessees of goods, and account debtors, respectively. Johnson is an investor.
 
 
 [6]
 The key distinction between a holder and a holder in due course is that the latter takes the negotiable instrument free of personal defenses. Compare Cal.Com.Code § 3305(2) with id. § 3306(b). A holder must take without notice of any defenses to become a holder in due course. Id. § 3302(1)(c). A holder must take by negotiation. Id. § 3202(1). A transferee for value may obtain the indorsement of a transferor in an effort to become a holder, but the negotiation of order paper takes effect only upon indorsement. Id. § 3201(3). Because the transferee does not become a holder until negotiation, and because only a holder without notice of defenses may become a holder in due course, a transferee with knowledge of a contract defense may not become a holder in due course and avoid the defense
 Had INA invoked the waiver clause by obtaining Northbrook's indorsement, it would be attempting to avoid a personal defense, of which it had knowledge, by becoming a holder. Whether California would find such a result--patently inconsistent with the UCC's structure--acceptable because of a clear term on the face of the instrument is questionable. Cf. Banco Mercantil, S.A. v. Sauls, Inc., 140 Cal.App.2d 316, 295 P.2d 55, 60 (1956) (promise on a non-negotiable instrument not to assert defenses against payee unenforceable).